785 A.2d 983

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Sean GLEASON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 31, 2001.

Decided Nov. 30, 2001.

David B. Miller, Assistant Public Defender, Chester County Public Defender's Office, West Chester, for Sean Gleason.

David R. Crowley, amicus curiae, Bellefonte, for Pennsylvania Association of Criminal Defense Lawyers.

Thomas Ost–Prisco, Anthony Sarione, West Chester, for Commonwealth of Pennsylvania.

Stuart B. Suss, amicus curiae, West Chester, for Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

We granted allowance of appeal in this case to determine whether an arresting officer possesses reasonable and articulable grounds to believe that a licensee violated a provision of the Vehicle Code, warranting the stop of the licensee's car, based upon his observations that the licensee's vehicle crossed the berm line by six to eight inches on two occasions for a period of a second or two over a distance of approximately one quarter of a mile. The Superior Court held that under these circumstances, an arresting officer is justified in stopping the licensee.

■ As a threshold matter, the Commonwealth argues that this Court lacks jurisdiction to entertain Appellant's petition for allowance of appeal from the Superior Court's order reversing the trial court's grant of his pre-trial motion to suppress. For the reasons that follow, we hold that this Court does, in fact, have jurisdiction to entertain discretionary appeals from such orders.

In *Commonwealth v. Rosario*, 538 Pa. 400, 648 A.2d 1172 (1994), a plurality decision of this Court, we addressed the question of whether the Superior Court had jurisdiction to entertain an appeal *as of right* from an order of the common pleas court reversing the Municipal Court of Philadelphia's order granting defendant Rosario's suppression motion. We held that the Superior Court lacked jurisdiction under these facts since such an appeal would be interlocutory, and thus, an appeal as of right was unwarranted. We rejected Rosario's assertion that a footnote found in this Court's decision in *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381 (1988), supported his claim that he was entitled to file an appeal as of right from the order reversing the grant of suppress. In *Baker*, unlike *Rosario*, the Superior Court, as here, had reversed an order of the common pleas court granting a suppression motion and discretionary appeal by way of a petition for allowance of appeal was filed with this Court. In discussing whether we lacked jurisdiction to entertain discretionary review, we stated the following:

> We find no merit in the Commonwealth's contention that an appeal taken from appellate reversal of a suppression order is interlocutory and that the instant appeal should therefore be quashed. Appeals taken by defendants following appellate reversals of orders suppressing evidence are clearly cognizable by this Court. See *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

*Baker*, 541 A.2d at 1382, n. 1.

In rejecting Rosario's contention that this footnote afforded him the avenue to appeal *as of right* to the Superior Court, Justice Castille, joined by then Justice, now Chief Justice,

Flaherty and Justice Papadakos, overruled *Baker* to the "extent this language ... suggests that appellate reversals of suppression orders are not interlocutory...." He went on to note that

> [w]hile there may be instances in which an appellate court, in exercise of its discretionary powers, may entertain a challenge to the lower court's reversal of a suppression order if such a claim were properly raised before it in a petition for allowance of appeal, such is not the case here. See e.g. Pa.R.A.P. 1114. Here, a petition for allowance of appeal was not filed.

*Rosario,* 648 A.2d at 1175.

Likewise, the concurring opinion authored by Justice Montemuro and joined by then Chief Justice Nix, this author and Justice Cappy, distinguished between appeals as of right, as sought by Rosario, and requests for discretionary review, which was the case in *Baker.* The concurring opinion advocated overruling *Baker* in a more limited fashion than in the lead opinion, noting that it would do so to the extent that *Baker* "suggests that appellate reversals of suppression orders are not interlocutory and [are] appealable as a matter of right to the Superior Court in cases such as [Rosario]." *Id.* at 1176. The concurrence emphasized that it "[did] not believe that *Baker* should be overruled so as to suggest that all appellate reversals of suppression orders are interlocutory, thus precluding this Court from its longstanding practice of reviewing such orders where special or important reasons are presented." *Id.*

Thus, based upon the foregoing, it is clear that a majority of this Court is of the view that we may entertain discretionary review by way of a petition for allowance of appeal in a case where the Superior Court has reversed a lower court order granting suppression. As we conclude that we have jurisdiction to entertain Appellant's appeal, we now turn to the facts of this case.[1]

1. The dissent does not believe that this case presents special or important reasons warranting a grant of allowance of appeal noting that "this case involves the supremely fact-bound question of the lawfulness of a

On July 21, 1998, in the early morning hours, Officer Guy Rosato of the Westtown East Goshen Police Department was on patrol traveling westbound on the West Chester Pike, a/k/a Route 3, in East Goshen Township. The West Chester Pike is a four lane divided highway. Officer Rosato noticed a gray Mazda approximately eight to ten car lengths in front of him. He followed the vehicle and observed it cross the solid fog line on two or three occasions over a distance of approximately one quarter mile.[2] During the period that Officer Rosato was following the vehicle, there were no other vehicles on the roadway. Nevertheless, Officer Rosato decided to investigate as to the reason for this behavior.

Upon stopping Appellant, Officer Rosato observed signs of intoxication and performed field sobriety tests, which Appellant failed. Appellant was placed under arrest and refused to submit to blood alcohol testing. Officer Rosato then searched Appellant and his vehicle and recovered, among other things, a suspended driver's license, an uncapped syringe, and a small amount of cocaine. Appellant was charged with driving under

particular traffic stop, which led to drug- and DUI-related charges." Dissenting Opinion at 6. Contrary to the dissent's view, however, the issue is not one focused entirely on the factual scenario of the underlying matter, but instead was granted in order for this Court to determine whether the Superior Court had lowered the standard for determining what constitutes "articulable and reasonable grounds to suspect a violation" of the Vehicle Code for purposes of Section 6308(b). Specifically, our inquiry focuses upon whether the Superior Court has issued a decision in contravention of our prior decision in *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995), by lowering the probable cause standard required therein. This is the issue for which we concluded special and important reasons existed warranting a grant of allowance of appeal. There are at least two other cases pending resolution of this matter before the Court. See *Commonwealth v. Cosnek*, 582 WAL 2000, and *Commonwealth v. Baumgardner*, 138 MAL 2001.

Ultimately, it is concluded herein that the Superior Court did lower the standard previously articulated by this Court in *Whitmyer*; it is noted that the dissent apparently agrees with such determination.

2.  Officer Rosato testified on direct examination that he observed the vehicle cross the fog line two to three times; on cross examination, Officer Rosato stated that he saw the vehicle cross a minimum of two times, but that he could not recall whether it crossed the fog line a third time.

the influence of alcohol, driving with a suspended license, careless driving, possession of a controlled substance, and possession of drug paraphernalia.

Appellant subsequently filed a motion to suppress all of the physical evidence seized by Officer Rosato based upon the assertion that the seizure stemmed from an illegal stop of his vehicle. The trial court granted Appellant's suppression motion concluding that Officer Rosato was not justified in stopping Appellant simply because he observed Appellant swerve onto the berm of the roadway two or three times. The court noted:

> Given the early morning hour, the fact that there was no other traffic on the roadway and the rather momentary nature of defendant's vehicle crossing the fog line on two perhaps three occasions, the officer erred in believing he had justification to stop defendant's vehicle. The observations of Office [sic] Rosato do not warrant a stop on any cognizable legal theory.

Trial court opinion at 2 n. 1.

The Superior Court, 754 A.2d 17, in an unpublished decision with one panel member dissenting, reversed. The court noted that the Commonwealth's sole argument on appeal was that Officer Rosato possessed a reasonable suspicion to stop Appellant for violating Section 3309(1) of the Vehicle Code.[3] This section provides, in relevant part:

> (1) **Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made safely.

While the court conceded that there was no evidence presented at the suppression hearing demonstrating that Petitioner

---

**3.** The Commonwealth now attempts to assert that Officer Rosato had reasonable suspicion to stop Appellant for violating Section 3301 (driving on right side of roadway) of the Vehicle Code; however, since the Commonwealth's sole basis on appeal to Superior Court was its assertion that Officer Rosato had reasonable suspicion to stop Appellant for violating Section 3309(1), we need not address this contention.

violated this section of the Vehicle Code, the court neverthe-less found the stop to be justified based on the following:

> We cannot agree ... that [Appellant's] drifting onto the berm of the highway two or three times within such a short distance failed to justify the stop in the within case. In-deed, [Appellant's] repeated inability to remain on the high-way with an intersection approaching reasonably prompted Officer Rosato to "check on the operator for his erratic driving[;] [h]is condition, whether he had been drinking or possibly falling asleep."
>
> N.T. 1/25/99 at 5–6, 13.

Slip op. at 4.

Appellant argues that the Superior Court's decision conflicts with this Court's prior decision in *Whitmyer*, wherein we required that before stopping a vehicle, an officer must be able to articulate specific facts which establish probable cause to believe that the vehicle or its driver was in violation of some provision of the Vehicle Code. *Id.* at 1116. Appellant argues that in this case the Superior Court applied a less stringent "reasonable suspicion" standard in analyzing whether the stop of Appellant's vehicle was proper rather than the reasonable and articulable grounds standard, i.e., the probable cause standard articulated by this Court in *Whitmyer*. We agree.

█ In *Whitmyer*, our Court granted allowance of appeal to determine whether a police officer was legally justified in stopping Whitmyer. There, the arresting officer, Trooper Thomas Kambic, was traveling south on Interstate 81 in Dauphin County when he observed Whitmyer's vehicle pro-ceeding in the same direction. Whitmyer was behind another vehicle as the two cars approached a point on the Susquehan-na River Bridge where two lanes of traffic merged into a single lane. Trooper Kambic then saw Whitmyer drive over the solid white line on the roadway and pass the vehicle in front of him before the vehicle merged into the same lane. There was, however, no evidence that Whitmyer operated his vehicle in a careless or reckless manner while doing so.

Trooper Kambic continued to follow Whitmyer as he traveled across the bridge into Cumberland County. Utilizing his speedometer for two-tenths of a mile, Trooper Kambic estimated Whitmyer's speed at seventy miles per hour. Shortly thereafter, Trooper Kambic stopped Whitmyer and cited him for driving at an unsafe speed. He also warned Whitmyer about his erratic lane change. The Trooper noticed the smell of burnt marijuana as he approached the vehicle. Whitmyer was ordered out of the vehicle; a search revealed marijuana and rolling papers. Whitmyer was subsequently charged with possession of marijuana and paraphernalia.

Whitmyer filed a motion to suppress, which the trial court granted. The court held that there was no probable cause to believe that Whitmyer violated the Vehicle Code since he did not fail to yield to an oncoming car when he passed the car in front of him, nor did he pass the vehicle in a posted no passing zone. Furthermore, the court held that the officer's estimate of Whitmyer's speed did not constitute probable cause since the officer would have had to time him for three-tenths of a mile pursuant to the Vehicle Code to accurately estimate his speed.

On appeal, we affirmed the Superior Court's decision affirming the trial court. In doing so, we cited to our prior decisions in *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), and *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975). In *Swanger,* we addressed the question of whether a police officer could stop the driver of an automobile without having observed the driver violate any provision of the Vehicle Code. In concluding that such a stop would not be proper, we first noted that the stopping of a vehicle and the detainment of its passengers constitutes a seizure implicating the Fourth Amendment. We then balanced the need to search and/or seize against the invasion which the search and/or seizure entails. Noting the interests on both sides, we concluded that an individual's interest in being free from governmental intrusions outweighed the Commonwealth's interest in ensuring that drivers are in full compliance with the Vehicle Code when operating an automobile, a dangerous

instrumentality responsible for numerous deaths each year. Thus, we held that

> before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever.

*Swanger*, 307 A.2d at 878.

In *Murray*, this Court reversed the defendant's conviction for theft, holding that the evidence obtained from the search of his vehicle should have been suppressed since police were unable to articulate specific facts "which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Vehicle] Code." *Murray*, 331 A.2d at 416–17. There, police responded to a burglar alarm that had been activated inside a clothing store. They were unable to apprehend or identify a fleeing suspect. Approximately one hour later, they observed a vehicle pull into a driveway of a house near the store and then depart. Police followed the car, which at no time violated any traffic laws. Police signaled the car to stop and when they approached, they observed a hammer and railroad spike. A further search of the vehicle, conducted pursuant to a warrant, disclosed evidence from the break-in.

The Commonwealth, in *Whitmyer*, attempted to distinguish our decisions in *Swanger* and *Murray* since those cases were decided prior to the enactment of Section 6308(b) of the Vehicle Code. This Section provides that

> [w]henever a police officer ... has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

120

The Commonwealth posited that our decisions in *Swanger* and *Murray* were needed in order to curb an officer's virtually unlimited authority under the prior version of the Code,[4] but that § 6308(b) provided limitations by way of statute.

We rejected the Commonwealth's argument that, given this background, the lower courts improperly applied a heightened "probable cause" standard to the facts in *Whitmyer* since Section 6308(b) of the Vehicle Code only requires that an officer have "articulable and reasonable grounds to suspect a violation" in order to stop a vehicle. We noted the following:

According to the Commonwealth, both the trial court and the Superior Court have disregarded the above provision [Section 6308(b)] in favor of a heightened probable cause standard in assessing the legal justification of the stop of Appellee. We disagree and find that the law has been correctly applied in this case.

The crux of the Commonwealth's argument centers on the semantic difference between the standard articulated in *Murray*-probable cause to believe that there has been a violation of the Vehicle Code, and the language of the statute—articulable and reasonable grounds to suspect a violation of the Vehicle Code. However, when we balance the underlying interests of the individual and the government, *the two standards amount to nothing more than a distinction without a difference.*

The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those who travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court:

An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to govern-

4. Under the previously enacted 75 P.S. § 1221(b), police had the right to stop any vehicle upon request for the purpose of checking for proof of registration, insurance, etc.

mental regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel.

*Delaware v. Prouse,* 440 U.S. 648, 662[, 99 S.Ct. 1391, 59 L.Ed.2d 660] (1979) (footnote omitted).

When previously faced with these two competing interests, we held "that a stop of a single vehicle is unreasonable where there is no outward sign the vehicle or the operator are in violation of the Vehicle Code.... Before the government may single out one automobile to stop, there must be specific facts justifying this intrusion." *Commonwealth v. Swanger,* [453 Pa. 107,] 307 A.2d at 878. Thus, the presence of similar facts in this case should dictate a similar result. The legislature has vested police officers with the authority to stop vehicles whenever they have "articulable and reasonable grounds to suspect a violation" of the Vehicle Code. 75 Pa.C.S. § 6308(b). Applying that standard to the instant case, it is apparent that the trial court and Superior Court were correct when they concluded that Trooper Kambic had no justifiable basis for stopping Appellee.

*Whitmyer,* 668 A.2d at 1116–17 (emphasis added).

Given the foregoing, we conclude that the Superior Court erred in holding that Officer Rosato was justified in stopping Appellant's vehicle under the facts of this case. As noted previously, the court conceded that "the lack of any evidence at the suppression hearing that Appellant's driving created a safety hazard leads us to agree with the trial court that there was insufficient evidence to support a Section 3309(1) violation." Slip op. at 4. In finding the stop of Appellant to be justified nevertheless, the court lowered the standard necessary for a proper vehicle stop as articulated by this Court in *Whitmyer.*

If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*

*Whitmyer,* 668 A.2d at 1116, citing *Swanger,* 307 A.2d at 879 (emphasis added).

Accordingly, we reverse the order of the Superior Court and reinstate the trial court's order granting Appellant's suppression motion.

Justice NEWMAN did not participate in the consideration or decision of this case.

Justice CASTILLE files a concurring and dissenting opinion.

Justice SAYLOR dissents.

CASTILLE, Justice, concurring and dissenting.

I agree with the majority that the question of jurisdiction to entertain this matter is controlled by *Commonwealth v. Rosario,* 538 Pa. 400, 648 A.2d 1172 (1994).[1] The prosecution in *Rosario* began in the Municipal Court of Philadelphia and, thus, the suppression question had a built-in, extra layer of potential judicial review. The Municipal Court granted Rosario's suppression motion and the Commonwealth, certifying in good faith that the suppression order substantially handicapped its prosecution, appealed the suppression order to the Court of Common Pleas. That court, sitting as an appellate court, reversed the suppression order and remanded the case to the Municipal Court for trial. Rosario then attempted to file an appeal as of right from the unfavorable suppression

1. The Opinion Announcing the Judgment of the Court in *Rosario* was written by this author and joined by then-Justice (now-Chief Justice) Flaherty and Justice Papadakos. Justice Montemuro's Concurring Opinion was joined by then-Chief Justice Nix and Justices Zappala and Cappy. Justice Cappy also filed a separate Concurring Opinion.

ruling by the Court of Common Pleas to the Superior Court, but that court quashed the appeal as interlocutory.

Upon further discretionary review to this Court, Rosario argued that the Common Pleas Court order was a final order from which he enjoyed an automatic right of appeal to Superior Court. This Court affirmed the Superior Court's quashal order. The plurality opinion authored by this Justice reasoned that the Common Pleas Court's reversal of suppression was not a final order since it "did not dispose of the matter or effectively terminate the litigation." 538 Pa. at 404, 648 A.2d at 1174. That holding was consistent with this Court's long-standing precedent. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963), which involved "[t]he first 'search and seizure' question to reach this Court since the decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 [(1961)]," 411 Pa. at 58, 190 A.2d at 306,[2] this Court long ago addressed the question of the appealability of pre-trial suppression orders. A suppression order that effectively terminates or substantially handicaps the prosecution is final as to the Commonwealth and must be subject to review because the Commonwealth otherwise would have no effective avenue of appellate review. *Id.* at 63–64, 190 A.2d at 308.[3] The defendant's claim of a right of appeal from an adverse suppression ruling, however, "stands upon an entirely different footing:"

> The denial of a defendant's motion for the suppression of evidence does not deprive a defendant of an appellate review of the validity of that order. At trial, the defendant still has full opportunity to object to the introduction into evidence of the allegedly improper evidence and, in the event of his conviction, he will then have an opportunity to

---

**2.** *Mapp* for the first time made the Fourth Amendment's exclusionary rule binding upon the states.

**3.** The Rules of Appellate Procedure now explicitly recognize that the Commonwealth may appeal as of right otherwise interlocutory orders where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. Pa. R.A.P. 311(d). *See Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 536 n. 2 (2001).

secure an appellate evaluation of the propriety and admissibility of such evidence. Therefore, unlike the Commonwealth, an adverse pretrial disposition of a motion to suppress evidence does not deprive the defendant of his only opportunity for appellate review. Under such circumstances, the element of finality, which is the basis of appealability, is lacking in an order denying suppression and the defendant should have no right of appeal from such order.

*Bosurgi* at 64, 190 A.2d at 308–09.

In enforcing this settled, bedrock limitation upon a defense attempt to appeal as of right an adverse suppression order, the *Rosario* plurality opinion also rejected Rosario's reliance upon language found in a footnote in *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381 (1988). The footnote stated that:

We find no merit in the Commonwealth's contention that an appeal taken from an appellate reversal of a suppression order is interlocutory and that the instant appeal should therefore be quashed. Appeals taken by defendants following appellate reversals of orders suppressing evidence are clearly cognizable by this Court.

*Baker*, 518 Pa. at 146 n. 1, 541 A.2d at 1382 n. 1. The plurality would have overruled *Baker* to the extent the quoted language "suggests that appellate reversals of suppression orders are not interlocutory." The plurality recognized, however, that there may be instances where an appellate court could, in its discretion, entertain a defense challenge to a lower court's suppression reversal "if such a claim were properly raised before it in a petition for allowance of appeal." *Rosario*, 538 Pa. at 405, 648 A.2d at 1174–75. Since *Rosario* pursued an appeal as of right in the Superior Court, however, his was not such a case.

Justice Montemuro's Concurring Opinion in *Rosario* addressed both *Baker* and the distinction the plurality had noted between appeals as of right and requests for discretionary review. The Concurrence advocated overruling *Baker* in what it viewed as a "more limited manner" than the plurality. It noted that *Baker* involved a grant of suppression by the Court

of Common Pleas; a Commonwealth appeal to Superior Court which resulted in reversal of the suppression order; and a grant of a defense allocatur by this Court to review the suppression issue. Since *Baker* involved a discretionary appeal to this Court from the Superior Court's jurisdictionally appropriate review of a Commonwealth suppression appeal, the Concurrence reasoned that the footnote in *Baker* rejecting the Commonwealth's quashal argument "did no more than reassert our longstanding authority to review appellate reversals of orders suppressing evidence where they present 'special' or 'important' reasons for such review." *Id.* at 408, 648 A.2d at 1176. The Concurrence thus emphasized that it "[did] not believe that *Baker* should be overruled so as to suggest that all appellate reversals of suppression orders are interlocutory, thus precluding this Court from its longstanding practice of reviewing such orders where special or important reasons are presented." *Id.* Instead, the Concurrence agreed to overrule *Baker* only to the extent that *Baker* "suggests that appellate reversals of suppression orders are not interlocutory and [are] appealable as a matter of right to the Superior Court in cases such as [*Rosario*]." *Id.* at 409, 648 A.2d at 1176.

The jurisdictional issue raised in this case, of course, does not involve the power of an appellate court to entertain a criminal defendant's appeal as of right from the pre-trial denial of suppression relief (the scenario in *Rosario*) but, rather, the Supreme Court's power to engage in discretionary review of a suppression decision rendered by the Superior Court in a direct appeal by the Commonwealth, that was properly in that court's jurisdiction (the scenario in *Baker*). In light of the discussions in the *Rosario* plurality and in the Concurrence, described above, since this case came to this Court on allocatur, it is clear that this Court has jurisdiction to engage in discretionary review. Thus, I agree with the majority that the Commonwealth's argument that this Court lacks jurisdiction is meritless.

The more difficult question, of course, is whether this Court should grant discretionary review of a particular pre-trial suppression ruling. The considerations that govern our dis-

cretionary docket are well-known. *See* Pa.R.A.P. 1114 (appeal will be allowed "only where there are special and important reasons therefor"); I.O.P. (Supreme Court) V (outlining considerations governing allocatur). Given this Court's unique role, and the existence of the Superior Court and Commonwealth Court in our appellate review scheme, this Court generally does not grant discretionary appeals merely to review claims of error.

The unique nature of a pre-trial appeal such as the matter here should generally counsel against the grant of allocatur except in the most extraordinary of circumstances. Unlike most parties aggrieved by an order of the Superior Court or the Commonwealth Court, the appellant in a case such as this is not without further remedy. He still may prevail at trial, which would make moot his suppression complaint. And, even if he does not prevail at trial, he has a right of direct appeal following his conviction. At that point, he may raise all of his claims in one appeal and, although his suppression claim would fail in Superior Court, he presumably could seek review of the claim, along with any other claim, in a single allocatur petition to this Court.

When this matter was before us on an allocatur petition, I saw no special and important reason to grant review. Now that the matter has been fully briefed, it is clear to me that such review was improvidently granted. This case involves the supremely fact-bound question of the lawfulness of a particular traffic stop, which led to drug- and DUI-related charges. It resulted in an unpublished memorandum opinion in the Superior Court of no precedential value. There is no suggestion in the briefs, nor was there any suggestion in the allocatur petition, that there have been a rash of traffic stops in the Commonwealth based upon drivers crossing the "fog line" of the highway, such as to justify this Court's expense of resources in discretionary review here. These considerations, weighing against review, exist independently of the very real restraint that the pre-trial posture of the case should pose.

I do not dispute that there may be cases involving pre-trial suppression rulings of such cutting-edge importance that pre-

trial review is warranted by this Court. The garden variety claim presented here, however, does not present such a case. Furthermore, the very fact of our review of this type of claim will unduly burden our docket by encouraging further petitions seeking pre-trial error review of suppression rulings. Accordingly, I would dismiss this appeal as having been improvidently granted.[4]

Nevertheless, since a majority of this Court has determined to hear the appeal, a proper respect for that controlling view obliges me to address the question presented. Were I to reach the question, I would agree with the majority that the Superior Court ruling in this case was erroneous under this Court's decision in *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995). I agree with Judge Gavin in the trial court below where he concluded that there was insufficient evidence presented that appellant created any kind of safety hazard by crossing over the "fog line" two or three times.

---

4. The majority states that the broader issue involved here is whether the Superior Court has "lowered the standard" for what is sufficient to warrant a stop under the Motor Vehicle Code. The fact that a majority of this Court does not *agree* with a ruling by the Superior Court does not mean that the Superior Court "lowered" the governing standard. This is error review, pure and simple. Moreover, even if some broader issue were implicated, it will still be present for review, if necessary, *if* and when appellant is tried and convicted.