**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Brian DESCAR, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 2002.
Filed May 7, 2002.

Gerald A. Lord, York, for appellant.

Hugh S. Rebert, Asst. Dist. Atty., York, for Com., appellee.

Before: DEL SOLE, P.J., LALLY-GREEN and TAMILIA, JJ.

DEL SOLE, P.J.

¶ 1 This is a direct appeal from a judgment of sentence imposed following a jury trial in which Appellant was convicted of driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3731 and the summary offense of driving under suspension, DUI related. In this appeal Appellant alleges that trial counsel was ineffective for failing to file a suppression motion on the ground that "the police did not have sufficient cause to stop" him. Appellant's Brief at 11.

¶ 2 Trial counsel is presumed to be effective and Appellant has the burden of proving otherwise. *Commonwealth v. Williams,* 524 Pa. 218, 570 A.2d 75, 81 (1990). In reviewing ineffectiveness claims, we must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978). If not, we need look no further since counsel will not be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Lennox,* 250 Pa.Super. 80, 378 A.2d 462 (1977).

¶ 3 Appellant argues that counsel's ineffectiveness stems from his failure to pursue the suppression of evidence which resulted from a stop made without legal justification. Our Supreme Court has recently reiterated that, in order to justify a stop of a vehicle, the police officer must articulate specific facts which would provide probable cause to believe that the vehicle or the driver was in violation of the Motor Vehicle Code. *Commonwealth v. Gleason,* 785 A.2d 983 (Pa.2001).

¶ 4 The stop in this case followed an encounter with the police which occurred previously in the same early hours of January 22, 1999. The arresting officer testified that at 2:49 a.m. he received a radio call to report to an Exxon station. He traveled to that location and spoke to the complainant and then to Appellant who was sitting in the driver's seat of a vehicle.

When approached, Appellant advised the officer that he wished to drive. The officer observed that the complainant, who was apparently an acquaintance of Appellant's, held one set of keys. Appellant told the officer that a spare key was on the passenger seat and he wished to use that key to drive. During this conversation the officer noticed an odor of alcohol about Appellant. The officer related that Appellant had bloodshot eyes and was unable to focus on the conversation. The officer, believing Appellant to be intoxicated directed him not to drive, but after determining that Appellant remained intent to drive, the officer placed Appellant under arrest for public drunkenness, viewing Appellant as a danger to himself and others.

¶ 5 Following Appellant's arrest, his vehicle was locked and left at the scene. The officer took custody of both sets of keys and transported Appellant to the district magistrate's office where Appellant was arraigned. Appellant produced the $350 bond amount imposed by the magistrate and Appellant was released. At that time the officer advised Appellant that he could use the phone to call a taxi to go home. The officer further advised Appellant not to return for his vehicle until the next day when he was sober, and he was given back his car keys.

¶ 6 The officer then returned to his patrol duties. He was in a parking lot across from the gas station where Appellant's vehicle remained speaking to another parked officer when he observed a taxi pull up and Appellant emerge. Appellant walked over and spoke to the complainant from the earlier call and then entered his vehicle, started it and pulled out onto the roadway traveling southbound. At 5:28 a.m., the officer initiated a traffic stop and observed continued signs of Appellant's intoxication. Field sobriety tests were performed, which Appellant failed, and he was

placed under arrest. Appellant was transported to have his blood withdrawn for testing, which later showed Appellant's blood alcohol content to be .202%.

¶ 7 Appellant argues that although there was indicia of intoxication during the Appellant's first encounter with the officer, there was no evidence to support the stop, which occurred a few hours later. Appellant argues that neither officer testified that Appellant's gait or speech was hampered when he exited the taxi before he started to drive. He asserts that no evidence was presented to demonstrate that he "was intoxicated right before he was arrested the second time." Appellant's Brief at 13.

¶ 8 We cannot accept Appellant's argument. He fails to recognize that the officer who first observed Appellant's intoxicated condition sometime after the radio broadcast at 2:49 a.m. arrested Appellant and accompanied him to his arraignment. The officer testified that Appellant spoke very loudly the entire time. This officer remained in Appellant's presence until he was released. The officer was able to continually observe Appellant, and in fact advised him not to drive but rather to take a taxi home. Appellant did not heed this advice and instead had the taxi deliver him from the arraignment to his parked car which he then proceeded to drive. The officer testified as to the reasons for initiating the traffic stop at 5:28 a.m.:

> Based on the fact that I had just left him not very long ago and the level of intoxication, I felt it wasn't safe for him to be driving yet, which is why I told him to go home, so I initiated the traffic stop.

N.T., 8/30/00, at 67.

¶ 9 The officer had ample facts before him upon which probable cause could be

found to justify the stop of Appellant's vehicle for driving under the influence. Because the underlying claim is without merit, Appellant's trial counsel cannot be faulted for failing to pursue this matter.

¶ 10 Judgment of sentence affirmed.