# Commonwealth v. Almodovar

C.P. of Lehigh County, no. 3406 of 2004.

*Lisa R. Cipoletti, senior deputy district attorney,* for Commonwealth.

*Richard A. Webster, assistant public defender,* for defendant.

PLATT, *P.J.,* January 25, 2005—Presently before the court is the defendant's omnibus pretrial motion consisting of a motion to suppress. For the reasons stated below, the defendant's motion must be granted.

## I. SUMMARY OF FACTS

On August 27, 2003, at approximately 11:21 p.m., Officer Timothy Yarush of the Emmaus Police Department was on patrol in a marked police cruiser. Officer Yarush was driving at the time, following behind a black Cadillac, from State Avenue to Main Street in Emmaus. The defendant, Juan Almodovar, was the driver of the Cadillac. Officer Yarush followed the Cadillac for ap-

proximately 5 or 6 blocks (1/2 to 3/4 of a mile), during which time he observed the Cadillac violate the lane markings; the Cadillac was observed to have its left wheels cross the double yellow (center) line of the roadway twice, and to ride with its right wheels on (but not beyond) the white fog line (the right-hand boundary of the lane) several times. Officer Yarush decided to conduct a traffic stop and cite the driver of the Cadillac for careless driving. He followed the Cadillac until he felt they were in a safe location, and then conducted the traffic stop.

When Officer Yarush approached the Cadillac, he smelled alcohol and observed other indications, such as bloodshot eyes and Mr. Almodovar's hands shaking, that suggested Mr. Almodovar might have been driving under the influence of alcohol. Officer Yarush conducted field sobriety tests,[1] which Mr. Almodovar failed, and conducted a PBT, which gave a blood alcohol reading of 0.06 percent. A records check showed that Mr. Almodovar's driving privileges were suspended at the time. Officer Yarush decided that, although he did not feel he had strong enough evidence to charge Mr. Almodovar for DUI, he also could not allow Mr. Almodovar to continue driving. Officer Yarush gave Mr. Almodovar the opportunity to telephone someone to come get the Cadillac, but Mr. Almodovar was unable to get anyone to do so. Officer Yarush then decided to impound the Cadillac, rather than leave it by the roadside. In accord with department policy, Officer Yarush conducted an inventory of the car's contents, particularly looking for

---

1. The walk-and-turn, the one-leg stand, and the finger-to-nose tests.

valuables. During this inventory he found a rock of crack cocaine in a plastic bag in the ashtray. Mr. Almodovar was charged with possession of a controlled substance.

A hearing on defendant's omnibus pretrial motion was held January 3, 2005. Defendant's and Commonwealth's briefs on the issues were received January 12 and 19, respectively.

## II. SUPPRESSION

The defendant alleges in his omnibus pretrial motion that there was no probable cause for this vehicle stop. He further requests that the cocaine seized as a result of the subsequent inventory search be suppressed.

Section 6308(b) of the Vehicle Code, 75 Pa.C.S. §6308(b),[2] provides:

"Whenever a police officer . . . has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title."

In *Commonwealth v. Battaglia,* 802 A.2d 652, 655 (Pa. Super. 2002), the court had occasion to review the precise meaning of this section.

---

2. This section was amended effective February 1, 2004. Since the incident in question took place prior to the amendment of the statute, the prior version of the statute applies to this case.

"The legislature has vested police officers with authority to stop a vehicle when they have 'articulable and reasonable rounds to suspect a violation' of the Vehicle Code. 75 Pa.C.S. §6308(b).

"If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

"*Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113, 1116 (1995) (citations omitted) (emphasis in original). While at first glance these two phrases—'articulable and reasonable grounds' and 'probable cause'—might seem to express different standards, they, in fact, do not. In *Whitmyer,* the Supreme Court addressed this mistaken notion:

" . . . when we balance the underlying interests of the individual and the government, the two standards amount to nothing more than a distinction without a difference."

I note that the controlling cases on the subject are all heavily fact-dependant rulings; see inter alia, *Battaglia, supra; Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001); *Commonwealth v. Baumgardner,* 767 A.2d 1065 (Pa. Super. 2001); *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 113 (1995); *Commonwealth v. Lindblom,* 854 A.2d 604 (Pa. Super. 2004); *Commonwealth v. Mickley,* 846 A.2d 686 (Pa. Super. 2004); *Commonwealth v. Garcia,* 859 A.2d 820 (Pa. Super. 2004). Indeed, recognizing the confusion the issue engenders, the Superior Court has attempted to clarify a rule as best they can: in *Garcia,* they said

"[D]eciding a matter under the *Gleason* standard is not an easy task. But a close reading of the *Gleason* rationale, combined with careful attention to the facts of that case, lead us to conclude that where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted. Thus, appellant Gleason's crossing of the berm line on two occasions for a second or two were [sic] inadequate to support a traffic stop, while appellant Lindblom's repeated weaving within his lane, coupled with his driving over the center double lines and the berm line four or five times, provided probable cause to support a lawful traffic stop." *Id.* at 823. (footnote omitted)

So the task now before the court is to determine whether defendant's driving exceeded the "momentary and minor" standard of *Gleason.* I must also follow the Superior Court's reasoning in the recent case of *Commonwealth v. Klopp,* 863 A.2d 1211 (Pa. Super. 2004).

"In granting suppression of evidence seized, the suppression court ruled that erratic driving is not a per se violation of the Vehicle Code so as to justify a traffic stop, and appellee's driving did not pose a hazard to other motorists.

"[T]he defendant posed no safety hazard when her vehicle crossed the double yellow lines on the sole occasion when there was oncoming traffic. There was no impact. The oncoming driver moved an unspecified distance within his or her lane but there is no evidence that they left the lane. The driver took no drastic evasive action in response to the defendant's crossing of the center lines. No other evidence of oncoming traffic was presented to the court. Therefore, at the time of the stop, Trooper Dziedzic lacked

specific facts, which would have provided probable cause to believe that the defendant was in violation of section 3309(1) [Driving on roadways laned for traffic]." *Klopp,* at 1213. (internal citations omitted)

The Commonwealth contends that the car's left wheels crossing the double yellow line twice in a five to six block distance, and his right wheels riding on the white fog line, were sufficient probable cause to stop the Cadillac and cite defendant for careless driving. The standard is whether the defendant's driving exhibited a careless disregard for the safety of persons or property.

The Cadillac's left wheels, and only the left wheels, were observed to cross the double yellow line; there is no testimony suggesting that the Cadillac crossed over the line completely or mostly, and would have been in danger of a head-on collision with oncoming traffic. The Cadillac's right wheels rode on, but did not cross over, the white line which marked the right boundary of the lane. There is no testimony that any traffic, person, or property was endangered by defendant's driving. Officer Yarush did not conduct a traffic stop as soon as he observed the Cadillac violate the lane markings, but rather waited until they reached what he considered a safe location to do so.

I also note that, viewing the facts, they are more similar to those cases which have been determined to *not* have had probable cause to effect a traffic stop. The Cadillac did not cross entirely into the oncoming lane of traffic; only the left wheels crossed the double yellow line. The left wheels crossed the double yellow line only twice briefly. The Cadillac never interfered with oncoming traffic. The right wheels never crossed beyond the

right white line lane boundary. And (as *Baumgardner* and *Battaglia* state) a vehicle weaving within its own lane does not justify a stop.

Using *Garcia's* "momentary and minor" standard, I find that there did not exist probable cause to stop defendant's vehicle. As such, the defendant's motion, seeking to suppress the evidence obtained from the inventory search of his vehicle, viz., the cocaine, must be granted.

## ORDER

And now, January 25, 2005, after a hearing on the defendant's omnibus pretrial motion, and for the reasons set forth in the accompanying opinion, it is hereby ordered that the defendant's omnibus pretrial motion be and is granted. The evidence seized, the cocaine, is suppressed.