J-S45040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AKHMAD A. AKHMEDOV | : | |
| | : | |
| Appellant | : | No. 543 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 22, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-SA-0000330-2022

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED: FEBRUARY 12, 2024**

Akhmad A. Akhmedov, Appellant, appeals from the judgment of sentence dated March 22, 2023, of the Court of Common Pleas of Berks County after being found guilty of 75 Pa.C.S. § 3736 (a), Reckless Driving, and 75 Pa.C.S. § 3309 (1), Roadways Laned for Travel. We affirm.

The facts and procedural history are as follows:

Defendant maintains a Commercial Driver's License issued by the State of Florida. Defendant conducts business under the trade or fictitious name of My Truck Logistics, L.L.C., with a Florida address. An officer from the Pennsylvania State Police-Hamburg barracks issued three citations charging defendant with: Reckless Driving, Driving on Roadways Laned for Traffic, and Obedience to Traffic-control Devices Warning of Hazardous Conditions. The magisterial district judge found defendant guilty of Reckless Driving and Driving on Roadways Laned for Traffic and not guilty of Obedience to Traffic-control Devices Warning of Hazardous Conditions.

_____

[*] Former Justice specially assigned to the Superior Court.

Tr. Ct. Op. at 1.

Defendant appealed and the Berks County Court of Common Pleas held a bench trial. At the bench trial on March 22, 2023, three witnesses testified to the events of June 18, 2022 when Appellant's BMW was involved in a three-car accident on Route 78 in Berks County. We reviewed the testimony of Ashley DeFrank, eyewitness, and Pennsylvania State Police Trooper Jeffrey Hummel, investigating officer, who testified for the Commonwealth, and Appellant, who testified in his own defense.

Ms. DeFrank testified that she was driving approximately 70 miles per hour in the right lane of Route 78 which has a posted limit of 65 miles per hour. A BMW and a Scion passed her in the left lane "traveling very quickly." N.T. at 5. She observed the BMW pass the Scion on the median and get back into the left lane of traffic. N.T. at 6. With the BMW in front of the Scion in the left lane, the BWM driver appeared to slam on the brakes because the BMW came to a "dead stop." N.T. at 10. Ms. DeFrank did not see anything in the road that would cause the BMW driver to stop so abruptly. N.T. at 11. The Scion driver immediately braked behind the BMW. N.T. at 16. A truck behind the Scion collided into it, and the Scion went into the BMW. *Id*. Ms. DeFrank pulled over and saw the drivers get out of their cars, and she noted that she did not recognize any of them. N.T. at 13.

Trooper Hummel testified that when he arrived at the crash site, he observed that the truck sustained disabling front end damage, the Scion had heavy rear damage and moderate front damage, and Appellant's BMW had

- 2 -

structural and functional rear end damage. N.T. at 23-24. When the Trooper asked Appellant about having traveled on the median to pass the other car, Appellant denied it. N.T. at 25. The Scion and truck had to be towed away, but the BMW was able to be driven away. N.T. at 28. On June 20, 2022, two days after the incident, the Trooper called Appellant on the phone. N.T. at 26. Appellant then stated that the Scion driver's road rage threatened Appellant's safety, causing him to use the median. Appellant stated that he braked in the left lane was because he was trying to get over to the right lane to take an exit off the right side of the road because it was the nearest exit, and he was trying to get away from the Scion as soon as possible. N.T. at 27. It was when Appellant was slowing down to switch lanes to prepare to get off the exit that he was struck from behind by the Scion. Appellant told the Trooper on this phone call that even when using the median to pass the Scion, he never lost control of his vehicle. N.T. at 27. The Trooper testified that the Scion driver was charged with an equipment violation and a seatbelt violation. N.T. at 32.

Appellant testified that on the day in question, he was driving his BMW home with his daughter and son in the car. N.T. at 34-35. He stated that he was driving in the passing lane with cruise control on, and noticed the Scion tailgating him so close that he could not see the vehicle's hood in his rear-view mirror. N.T. at 35-36. He moved into the right "driving" lane so the Scion could pass in the passing lane, which the Scion did. N.T. at 37. Then the Scion got in front of Defendant in the right "driving" lane and slowed down. Because the Scion was now in front of Appellant in the driving lane and kept slowing

down, Appellant again moved to the passing lane to pass the Scion. N.T. at 38. As he passed the Scion on the left, the Scion started traveling farther left, effectively "squeezing" Appellant to the left of the road. Appellant thought it best for his safety to drive outside the lines of the left lane into the median shoulder on the left of the highway to pass the Scion. N.T. at 39. As soon as he passed the Scion and returned to the lined, left lane of travel, he noticed a green sign for an exit up ahead on the right. Feeling "threatened" by the Scion, Appellant began preparing to take the exit on the right. Because Appellant was now in the left lane and needed to get to the right lane, but there were cars in the right lane, he slowed down, waiting for a space in cars on the right so he could shift to the right lane and take the exit. N.T. at 40. He was then struck from behind by the white Scion, and the drivers involved all pulled over. Appellant stated that he didn't think to call 911, and when the Trooper arrived, he just wanted to get his paperwork and go home without saying anything. N.T. at 44, 49. He stated that Ms. DeFrank's testimony is not true. N.T. at 47.

At the conclusion of the bench trial, the trial court found Appellant guilty of 75 Pa.C.S. § 3736 (a), Reckless Driving, and 75 Pa.C.S. § 3309 (1), Roadways Laned for Travel. This appeal followed.

Appellant raises two issues in this appeal, both of which relate to the sufficiency of the evidence necessary to sustain his convictions. The applicable standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence

- 4 -

to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003).

Appellant's first issue is that the evidence was insufficient to allow the trial court to conclude beyond a reasonable doubt that Appellant was guilty of reckless driving. Appellant's Br. at 9. Specifically, Appellant contends that the accident was caused by another driver tailgating him and that no evidence was presented by the Commonwealth to rebut Appellant's testimony that he was "being tailgated, brake-checked and squeezed into the median area." Appellant's Br. at 17. He further argues that the evidence was insufficient to prove he slammed on his brakes because if he had, both cars would have suffered more extreme damage, and the testimony of the responding Trooper only classified the damage as "moderate." *Id.* at 18. Finally, no evidence was presented that Appellant's swerving off the roadway was done of his own volition or that he was engaged in road rage himself. *Id.* at 19.

The offense of Reckless Driving is defined in the Motor Vehicle Code as follows: "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S. § 3726(a). In **Bullick**, we reasoned that speeding alone does not constitute reckless driving. There we held that "[w]hile undoubtedly . . . 'speeding' may . . . increase the risk that a driver will be involved in a motor vehicle accident, more 'ordinary' or 'common' speeding does not necessarily produce a 'substantial' risk that an accident will occur." **Commonwealth v. Bullick,** 830 A.2d 998, 1003-04 (Pa. Super. 2003).

Here, the record shows, and Appellant admits, that he drove on the median in order to pass another car. In his testimony and in his brief, he states that he had no choice but to increase his speed and move forward while still traveling on the median to return to the lane of travel. Appellant's Br. at 17; N.T. at 36-37. Driving above the speed limit on the median outside the lanes marked for travel in order to pass another vehicle is an indica of unsafe driving practices contemplated in the reckless driving statute because it is outside of more "ordinary" or "common" traffic violations such as speeding. Appellant's behavior necessarily created a "substantial" risk that an accident would occur because an accident did in fact occur. As the trial court states:

> The evidence in this case was sufficient to show that defendant drove his vehicle in willful or wanton disregard for the safety of persons or property in driving his vehicle between 75 and 80 miles per hour and in passing a vehicle by driving on the median. Defendant's driving was a gross departure from prudent driving standards and, in fact, was the cause of an accident. Defendant is

a commercial truck driver who should know the safety laws that Pennsylvania and other states enacted. He therefore exhibited behavior that reflected a conscious disregard for the danger being created by his reckless driving.

Tr. Ct. Op. at 8.

We agree. Appellant states that he was forced to drive on the median and speed ahead to avoid "such a dangerous situation." Appellant's Br. at 16-17. To further bolster the claim that his actions were necessitated by his need to avoid danger, Appellant states in his brief that he was "accompanied by his children," *Id.* at 16, was "twice put in a dangerous situation," *Id.* at 17, did not know the intent of the other driver, *Id.*, had "concern for himself and his children," *Id.*, faced the "very real possibility of crashing," due to the other driver's behavior, *Id.*, was concerned for "both himself and his children," *Id.* at 18, "felt threatened" by the other driver, *Id.* at 19, felt the other driver would "do something crazy," *Id.*, felt that the other driver's behavior "constituted a risk of harm to the Defendant as well as his children," *Id.* at 23, and that Appellant "fear[ed] what might happen." *Id*. However, the trial court did not find Appellant's testimony credible because Appellant did not want to talk to the officer after the accident and did not report the other driver's road rage, despite the danger to which that driver allegedly subjected Appellant and his children. Specifically, the trial court supports its credibility determination as such:

> In the case *sub judice*, this court found the testimony of Pennsylvania State Trooper Jeffrey Hummel and that of the disinterested witness, Ashley DeFrank, much more credible than that of defendant. Defendant changed his version of the facts

three times. He first denied passing onto the median and having any involvement with the crash when the trooper initially interviewed him. In a second interview, defendant told Trooper Hummel that he passed the Scion on the median because he had felt that his safety had been threatened. Defendant testified, however, that he was squeezed on the median by the driver of the Scion. The court is aware that the testimony changed after defendant had learned about the negative consequence on his CDL license. Further, as stated previously during his direct testimony, defendant stated that "he had not wanted to talk to the trooper, he had just wanted his paperwork" (Transcript, 48-49). One would assume that a truly fearful person would have wanted to speak immediately to the officer who was investigating the accident.

Tr. Ct. Op. at 7. The trial court as factfinder was free to believe all, some, or none of the testimony presented. **Troy, supra.** We find no abuse of discretion and no error of law in the inferences drawn by the court from the evidence in the record.

Appellant's second issue is that the evidence was insufficient to sustain a conviction under 75 Pa.C.S. § 3309(1), Roadways Laned for Travel, because "the record unequivocally established that the defendant was forced out of a lane of travel and into a median by the actions of another motorist." Appellant's Br. at 20. Specifically, he argues that there is no testimony or evidence in the record concerning whether or not he moved from the passing lane of travel and to the median without first ascertaining that the movement could be made safely, and that there was no evidence any other vehicles were driving in the median for which he could have created a hazard. Appellant's Br. at 23. Alternatively, he argues that he was involuntarily forced into the median by the actions of the other driver. **Id**.

The applicable section states,

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:
(1) Driving within single lane. — A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

This Court has explained that although section 3309(1) requires motorists to maintain a single lane of travel "as nearly as practicable," the statute "does not foreclose minor deviations." **Commonwealth v. Enick**, 70 A.3d 843, 847 (Pa. Super. 2013). Further, section 3309(1) is intended to prevent motorists from changing lanes in a manner that creates a safety hazard. **See, e.g., Commonwealth v. Feczko**, 10 A.3d 1285, 1292 (Pa. Super. 2010) (*en banc*).

Appellant cites **Commonwealth v. Gleason**, 785 A.2d 983 (Pa. 2001), for the proposition that the Commonwealth must establish that the vehicle departed from its lane of travel and that the driver did not first determine if he could do so safely. Appellant's Br. at 22. Appellant states, "On appeal, the **Gleason** Court concluded that the Commonwealth had failed to demonstrate that the officer had probable cause to believe that the Defendant had violated Section 3309(1) because the record did not establish that the Defendant 'created a safety hazard.' **Id.** at 989." Appellant's Br. at 22.

**Gleason** is distinguishable from the instant case because Appellant deviated from the lined travel lane for more than a few seconds and by more

than a few inches, as was the circumstance in **Gleason**. More importantly, while the Gleason court found that the record did not establish the defendant created a safety hazard, here, Appellant caused a car crash. Thus, the safety element is satisfied.

Appellant further states that in **Gleason**, "the police officer did not testify that there were other vehicles on the road or that the Defendant moved from his lane without first determining if he could do so safely." Appellant's Br. at 22. Thus, Appellant argues, the lack of other vehicles driving in the median or in the vicinity of his vehicle is evidence he did not create a safety hazard by driving into the median. Appellant's Br. at 20, 22-23. We disagree. In **Commonwealth v. Grove**, we upheld a conviction under section 3309(1) where the officer testified that the appellant's vehicle crossed the center line and then crossed over the fog line when weaving back into the lane. **Commonwealth v. Grove,** No. 685 MDA 2023, 2023 Pa. Super. Unpub. LEXIS 3059, at *12 (Dec. 11, 2023).[1] We rejected the appellant's argument that because the officers testified that he was not speeding and that no other vehicles were present on the stretch of road besides the appellant's and the officers' vehicles, he was driving as nearly as practicable within the lines in accordance with the statute. **Id**.

---

[1] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandum cited *supra* and find it to be persuasive in this matter.

Here, there was sufficient evidence to prove that Appellant committed a violation of section 3309(1) because Ms. DeFrank, the eyewitness, testified to seeing Appellant's vehicle pull onto the median to pass the Scion, go back into the left lane of traffic, and suddenly stop, which immediately caused the accident. N.T. at 5. The trial court states, "Ms. DeFrank was a reliable, disinterested witness. She was actually in the middle of the whole incident and witnessed the events as they unfolded. She had no reason to lie because nothing impacted her, and she did not know any of the drivers or their family." Tr. Ct. Op. at 8.

In response to Appellant's claim that all the evidence presented at the trial substantiated that Appellant was forced out of a lane of travel and onto a median by the actions of another driver engaged in a road rage, the trial court states,

> **All** the evidence did not show that defendant was forced onto the median by the actions of another driver who was engaged in road rage behavior. **Defendant** testified to this, but the disinterested witness testified that defendant passed the other driver on the median while traveling at a high rate of speed. This court did not find defendant's testimony credible. Defendant changed his version of the accident three times. He originally did not even want to talk to the trooper. He now wishes to overturn his reckless driving conviction, so his version has changed; however, the overwhelming evidence does not support his testimony.

*Id.* (emphasis in original).

Again, we note that the trial court as factfinder was free to believe all, some, or none of the testimony presented. *Troy, supra.* We find no abuse of discretion and no error of law in the inferences drawn by the court from the

evidence in the record in convicting Appellant of section 3309(1). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2024