J-S16018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SHAWN L. WOOD | |
| Appellee | No. 670 EDA 2015 |

Appeal from the Order February 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009244-2014

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 09, 2016**

This is a Commonwealth appeal from the order[1] entered February 5, 2015, in the Philadelphia County Court of Common Pleas, granting the motion of appellee, Shawn L. Wood, to suppress the evidence recovered during a traffic stop.  When this appeal first appeared before this panel, we determined the trial court erred in concluding the investigating officers were not authorized to remove Wood from his vehicle and conduct a pat-down search for weapons during the stop.  ***See Commonwealth v. Wood***, 2016 WL 1757247, *3 (Pa. Super. 2016) (unpublished memorandum). Nevertheless, we remanded so the trial court could make additional findings

---

[1] In its notice of appeal, the Commonwealth properly certified that "this order terminates or substantially handicaps the prosecution of this case," a prerequisite to this Court's jurisdiction pursuant to Pa.R.A.P. 311(d).  Notice of Appeal, 3/9/2015.

as to whether or not the initial traffic stop of Wood's vehicle was proper. *See id.* The trial court subsequently complied with our directive and filed a supplemental opinion, in which it concluded the traffic stop was illegal. For the reasons below, we now affirm the order granting Wood's suppression motion.

In its supplemental opinion, the trial court summarized the relevant facts as follows:

> The evidence established that on July 13, 2014, at approximately 8:45 p.m., Philadelphia Officer Kyle Smith and his partner were on duty in the area of the 2000 block of 60th Street. Officer Smith testified that at that time and place he spotted a 2004 white Chevy Silverado traveling north in the southbound lane. Officer Smith's partner signaled the driver to let him know he was on the wrong side of the road by flashing his lights once. According to Officer Smith, the driver did not correct his lane of travel so Officer Smith's partner activated the overhead lights and pulled the vehicle over for the sole reason of driving on the wrong side of the road.
>
> Contrary to Officer Smith's testimony, Jodi-Lyn Lowry testified that she and [Wood] were headed northbound, attempting to make a left-hand turn down a one-way street and they never traveled on the wrong side of the road. According to Ms. Lowry, a police car was headed southbound so they stopped to allow the officers to go by before [] Wood made the turn because she stated two cars could not fit.[1] According to Ms. Lowry, they waved the officer forward before making the left-hand turn. The police flashed their lights once. Thinking they were being giv[en] the right-[of]-way, [Wood] started to make the turn when the police flashed their lights completely. On cross-examination, Ms. Lowry testified that at no time was [Wood's] truck traveling in the wrong lane of traffic. They were just attempting to make a left-hand turn.
>
> [Wood] testified that his work truck is bigger than usual; that it is like driving a U-haul. He stated that he was driving from his friend's house near 60th Street to go to the store. When

he got near where he needed to make a left turn to park, he pulled over a little bit to let a car go by. He saw the police car behind the car he had just let go by and waved at the police car to go before he made his turn; the police car flashed their lights at him once. Thinking he was being given the right-[of]-way, he went to turn and was about half-way through the turn when the police put the lights on completely.

_____

   [1] Ms. Lowry described [Wood's] truck as "pretty big" with solid work tool containers on each side which made the truck bigger than a normal truck.

Trial Court Supplemental Opinion, 7/19/2016, at 2-3 (record citations omitted).

After Wood was stopped, Officer Smith directed him to step out of his vehicle, and asked him if there was anything in the vehicle of which the officer should be aware. *See Wood*, *supra*, 2016 WL 1757247, at *1. Wood responded by telling the officer he had a gun in the glove box. He was subsequently arrested and charged with two violations of the Uniform Firearms Act. *See* 18 Pa.C.S. §§ 6106(a) and 6108.

Wood filed a pre-trial suppression motion on February 5, 2015, arguing the traffic stop was unlawful because the police did not have reasonable suspicion or probable cause to believe he was engaged in criminal activity. *See* Motion to Suppress Evidence, 2/5/2015, at ¶ 12. At the conclusion of a suppression hearing conducted on February 15, 2015, the trial court granted Wood's motion to suppress. Notably, the court never

decided whether the initial traffic stop was legal;[2] rather, it found Officer Smith had no grounds to remove Wood from his vehicle. **See** Trial Court Opinion, 6/16/2015, at 6 ("Here, the Commonwealth [] failed to provide specific facts by which to support a finding of reasonable suspicion that criminal activity was afoot and that [Wood] had to be removed from the vehicle.").

When the appeal first appeared before this panel, we agreed with the Commonwealth's contention that the officer did not need any reasonable suspicion of criminal activity to order Wood from his vehicle, assuming the traffic stop was valid. **See Wood**, **supra**, 2016 WL 1757247, at *3 (stating "it is well-settled that 'an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety.'"), quoting **Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002) (en banc ) (emphasis supplied and citations omitted). Further, we found Officer Smith's subsequent search of Wood's truck was proper based upon Wood's own statement to the officer that he had a gun in the glove box. **Id.**

Nevertheless, we recognized "our determination of whether Officer Smith's actions violated Wood's Fourth Amendment rights [was] dependent upon the legality of the initial traffic stop." **Wood**, **supra**, 2016 WL

_____

[2] **See** N.T., 2/5/2015, at 49 (the court stated: "I find that whether or not the officer had the right to stop the vehicle is not necessary for me to determine for this motion to suppress.").

1757247, at *3. Therefore, we remanded the case to the trial court to make additional findings and file a supplemental opinion because (1) the court specifically stated it had not determined "whether or not the officer had the right to stop the vehicle," and (2) that finding necessarily involved a credibility determination. *Id.* The trial court complied with our directive, and the issue is now before this panel for review.

When considering a trial court's suppression ruling, we must determine "whether the record supports the trial court's findings of fact and whether the trial court erred in its legal conclusions." *Commonwealth v. Enick*, 70 A.3d 843, 845 (Pa. Super. 2013) (citation omitted), *appeal denied*, 85 A.3d 482 (Pa. 2014). If the court's factual findings are supported by the record,

> we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. Ibrahim*, 127 A.3d 819, 822 (2015) (quotation omitted), *appeal denied*, 138 A.3d 3 (Pa. 2016). Moreover, we emphasize "it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 584 (Pa. Super. 2006) (quotation omitted).

A police officer's statutory authority to stop a motor vehicle is codified in Section 6308 of the Motor Vehicle Code:

**(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

In interpreting this subsection, the courts of this Commonwealth have concluded that a vehicle stop based solely on reasonable suspicion of a motor vehicle violation "must serve a stated investigatory purpose … [since, i]n effect, the language of Section 6308(b)—'to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title'—is conceptually equivalent with the underlying purpose of a *Terry* stop." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 257 (Pa. 2011). The *Feczko* panel further explained:

> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [*Commonwealth v.*] *Gleason*, 785 A.2d [983,] 989 [Pa. 2001)] (citation omitted). *See also* [*Commonwealth v.*] *Chase*, 960 A.2d [108,] 116 [(Pa. 2008)] (reaffirming *Gleason*'s probable cause standard for non-investigative detentions of suspected Vehicle Code violations).

*Id.* (emphasis in original and footnote omitted).

- 6 -

In considering the present case, we must first determine whether Officer Smith needed probable cause or reasonable suspicion to stop Wood's vehicle. In ***Commonwealth v. Salter***, 121 A.3d 987 (Pa. Super. 2015), a panel of this Court outlined the parameters for this determination as follows:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. **If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle.** Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. ***Compare*** [] ***Enick***, [***supra***,] 70 A.3d [at] 846 [] (probable cause required to stop for failure to drive on right side of roadway), ***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super. 2013) (probable cause required to stop for failure to use turn signal), ***Commonwealth v. Busser***, 56 A.3d 419, 424 (Pa. Super. 2012) (probable cause required to stop for failure to yield to emergency vehicles), *and* **Feczko**, 10 A.3d at 1291 (probable cause required to stop for failure to maintain lanes), ***with*** ***Commonwealth v. Holmes***, 609 Pa. 1, 14 A.3d 89, 96–97 (2011) (reasonable suspicion sufficient to stop to investigate front windshield obstruction), ***Commonwealth v. Bailey***, 947 A.2d 808, 812–14 (Pa. Super. 2008) (reasonable suspicion sufficient to stop to investigate faulty exhaust system or muffler); ***see also Commonwealth v. Landis***, 89 A.3d 694, 703 (Pa. Super. 2014) (noting that where trooper stopped

- 7 -

motorist for failing to drive within a single lane—and not to investigate possible DUI—he needed probable cause to stop).

*Id.* at 993 (emphasis supplied).

Here, Officer Smith testified he observed Wood "traveling northbound in a southbound lane[,]" driving "in the wrong lane" of traffic. N.T., 2/5/2015, at 6.[3] Therefore, the officer suspected Wood committed a violation of 75 Pa.C.S. § 3301(a)(5),[4] which mandates "a vehicle shall be driven upon the right half of the roadway except … [w]hen making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (related to required position and method of turning)."[5] Because it was not necessary to stop Wood's vehicle to determine whether he violated Section

---

[3] *See also id.* at 8 ("He was coming northbound in the southbound lane."); 13 ("He's traveling northbound in the southbound lane; I'm driving southbound; which means he's driving on the wrong side of the road.").

[4] Officer Smith did not charge Wood with any summary vehicle violations.

[5] Section 3322 provides that "[t]he driver of a vehicle intending to turn left within an intersection … shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard." 75 Pa.C.S. § 3322. Further, Section 3331 states, in relevant part:

(b) Left turn.--The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle. Whenever practicable, the left turn shall be made to the left of the center of the intersection and so as to leave the intersection or location in the extreme left-hand lane lawfully available to traffic moving in the same direction as the vehicle on the roadway being entered.

75 Pa.C.S. § 3331.

3301(a),[6] we find Officer Smith needed to possess probable cause that a violation occurred in order to stop Wood. *Salter*, *supra*, 121 A.3d at 993. *See also Enick*, *supra*, 70 A.3d at 846 (police officer needed probable cause to stop vehicle for suspected violation of Section 3301, because stop would serve no investigatory purpose).

In determining whether probable cause exists,

> we must consider "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime."

*Ibrahim*, *supra*, 127 A.3d at 824 (quotation omitted).

In its supplemental opinion, the trial court found, based on the testimony of Lowry, that Officer Smith did not have probable cause to stop Wood for a violation of Section 3301. The court opined:

> [T]he court finds Ms. Lowry's testimony credible – that [Wood] was attempting to make a left-hand turn; an exception under subsection (a)(5). If there was a momentary and minor violation of § 3301, it was insufficient to establish probable cause for a vehicle stop.

Trial Court Supplemental Opinion, 7/19/2016, at 3. In making this determination, the trial court necessarily credited Lowry's testimony that Wood was, at all times, traveling in the correct lane on the street, and he

_____

[6] Similar to a stop for speeding, either Wood was traveling in the wrong lane, or he was not; nothing more could have been determined during the vehicle stop. *Salter*, *supra*, 121 A.3d at 993.

was stopped as he was making the left hand turn. *See* N.T., 2/5/2015, at 26-27. Concomitantly, the court also, necessarily, discredited Officer Smith's testimony that he observed Wood traveling in the wrong lane of traffic before Wood approached the left turn.

As we stated *supra*, credibility determinations are within the sole province of the trial court. *Gallagher*, *supra*. Because the trial court's factual findings are supported by the record, "we are bound by those findings." *Ibrahim*, *supra*, 127 A.3d at 822. Therefore, we find no basis to disturb the trial court's suppression order.

Order affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2016