J-A20035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JIHAD IBRAHIM | |
| Appellee | No. 3467 EDA 2014 |

Appeal from the Order of August 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: C-51-CR-0010044-2013

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 29, 2015**

The Commonwealth appeals the trial court's August 11, 2014 order. In that order, the trial court granted Jihad Ibrahim's motion to suppress evidence.  For the reasons contained herein, we reverse the order, and we remand for further proceedings.

On July 19, 2013, Philadelphia Police Officer Joseph Marrero and his partner observed Ibrahim riding a bicycle in the wrong direction on a one-way street in Philadelphia.  When the officers attempted to stop him, Ibrahim sped off on the bike.  While fleeing, Ibrahim dropped a firearm. Ibrahim was apprehended, and charged with persons not to possess a firearm, possessing a firearm with altered manufacturer's number, carrying

a concealed firearm without a license, carrying a firearm in Philadelphia, and possession of an instrument of crime.[1]

On August 11, 2014, Ibrahim presented an oral motion to the trial court to suppress the firearm. The trial court immediately proceeded to a hearing, at which the following testimony was elicited, as summarized by the trial court:

> [Officer Marrero] testified that[,] on July 19, 2013[,] at approximately 10:20 a.m.[,] he was in an unmarked police vehicle in plain clothes proceeding eastbound in the 1800 block of Dickenson Street in South Philadelphia[,] which runs one-way in that direction. He observed [Ibrahim] riding on a bicycle in the 1700 block of Dickenson travelling westbound towards him approximately a half a block away. He attempted to stop [Ibrahim] for a violation of the Motor Vehicle Code for riding his bicycle the wrong way by yelling at him [to] "Stop, stop the bike," at which time he claimed [that Ibrahim] refused to stop, continued to pedal faster, and turned southbound onto Bouvier Street[,] which is one-way southbound. He followed [Ibrahim] without initiating his lights or siren and at the end of Bouvier Street, [Ibrahim] made a right-hand turn onto Tasker Street heading westbound, and at the corner of 18th and Tasker, about a quarter of a block further, [Ibrahim] jumped off of the bicycle, removed a firearm from his waistband and discarded it on the street. At that point, the officer exited his vehicle, announced that he was the police, ordered him to stop[,] and chased and apprehended him.
>
> Q. Did you announce yourself—at any point, did you announce yourself as police?
>
> A. Yes. Once I saw [Ibrahim] jump off of the bicycle and remove the object from his waistband, I announced police and to stop.

---

[1] 18 Pa.C.S. §§ 6105, 6110.2, 6106, 6108, and 907, respectively.

He then testified that he did not issue a traffic citation because he is not permitted to issue traffic tickets when in plain clothes and he did not have a citation book with him. He recovered the weapon from where he saw [Ibrahim] discard it.

On cross-examination, the officer confirmed that he first saw [Ibrahim] when he was approximately a half a block ahead of him, that he only observed him going the wrong way "for a matter of feet," [that he] first yelled for him to stop through his car window when he caught up with him on Bouvier Street, at which point [Ibrahim] was travelling in the correct direction, without announcing that he was a police officer, and that, therefore, there was no way for [Ibrahim] to know that he was a police officer; in addition, he did not intend to issue a traffic citation to [Ibrahim] but only to warn him. [Ibrahim] did not testify or present any other evidence.

Trial Court Opinion ("T.C.O."), 1/15/2015, at 1-2 (references to the notes of testimony omitted).

After hearing the testimony and the argument from both parties, the trial court determined that the stop was pretextual, and that Ibrahim's abandonment of the firearm was forced. **See** Notes of Testimony ("N.T."), 8/11/2014, at 22. Accordingly, the trial court granted Ibrahim's suppression motion. **Id.**

On September 10, 2014, the Commonwealth filed a notice of appeal, in which the Commonwealth certified that the trial court's suppression order would either terminate or substantially handicap the prosecution pursuant to Pa.R.A.P. 311(d). On the same date, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), even though the trial court had not yet ordered such a statement. On

- 3 -

January 15, 2015, the trial court issued the above-quoted opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth raises the following issue for our consideration:

> Where [Ibrahim] drove the wrong way on a one-way street on a bicycle and, when ordered to stop, sped away and discarded a gun, did the lower court err in suppressing the gun on the ground that the stop was pretextual because the police wanted to stop [Ibrahim] for reasons unrelated to the traffic violation?

Brief for the Commonwealth at 1.

Our standard of review is well-settled.

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.
>
> Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa. Super. 2010) (internal citations to cases and rules omitted). With regard to the trial court's legal conclusions, our standard of review is *de novo*. *Commonwealth v. Briggs*, 12 A.3d 291, 320-21 (Pa. 2011) (citations omitted).

- 4 -

We first note that the provisions of the Motor Vehicle Code apply with full force in this case, even though Ibrahim was riding a bicycle instead of a vehicle at the time that the police observed him driving in the wrong direction down a one-way street. *See* 75 Pa.C.S. § 3501(a) ("Every person riding a pedalcycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this title, except as to special provisions in this subchapter and except as to those provisions of this title which by their nature can have no application."). We now turn to the principles that govern interactions between a police officer and a person operating a vehicle on this Commonwealth's roadways.

The general rule regarding the level of suspicion that a police officer must possess before stopping a vehicle is codified at 75 Pa.C.S. § 6308(b), which provides as follows:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

*Id.* Although subsection 6308(b) delineates the general rule, it does not apply in all instances because, as we have held, not all vehicle offenses require further investigation to determine whether a motorist has committed that offense. Indeed, despite subsection 6308(b)'s reasonable suspicion

standard, some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop.

In ***Commonwealth v. Feczko***, 10 A.3d 1285 (Pa. Super. 2010) (*en banc*), an *en banc* panel of this Court explained the requisite levels of suspicion that a police officer must have before effectuating a stop, as follows:

> In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—"to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title"—is conceptually equivalent with the underlying purpose of a ***Terry***[2] stop.
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code*." ***Commonwealth v. Gleason***, 785 A.2d 983, 989 (Pa. 2001) (superseded by subsection 6308(b); emphasis in ***Gleason***).

***Id.*** at 1290-91 (citation modified; some citations omitted).

---

[2]     ***Terry v. Ohio***, 392 U.S. 1 (1968).

We further elaborated upon the distinction between Motor Vehicle Code offenses that require probable cause and those that require only reasonable suspicion most recently in **Commonwealth v. Salter**, ___ A.3d ___, 2015 Pa.Super. 166 (Pa. Super. 2015).   Therein, we stated the following:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered.  If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle.  Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.  Illustrative of these two standards are stops for speeding and DUI.  If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle.  This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while travelling upon a highway.  On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Id.* at *3.

In light of these principles, our first task is to determine whether Officer Marrero needed probable cause or reasonable suspicion to stop, or in this case attempt to stop, Ibrahim.  To make this determination, we must consider the language and nature of the offense that triggered Officer Marrero's actions.  Ibrahim was travelling the wrong way down a one-way

street, an illegal action that is governed by 75 Pa.C.S. § 3308. That section state that "[u]pon a roadway designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic-control devices." *Id.* We have no difficulty concluding that a police officer must possess probable cause before stopping an individual who is violating this provision. Like the speeding offense described in the example from *Salter*, the investigation into the offense of driving in the wrong direction on a one-way street is completed when the officer observes a motorist doing exactly that. No further investigation is required, and nothing of evidentiary or investigatory value with regard to that particular offense can be ascertained once the stop is effectuated. Thus, section 3308, like speeding, is an offense that requires probable cause, not reasonable suspicion, before an officer may stop the vehicle.

Without question, Officer Marrero possessed probable cause in this case. To determine whether probable cause exists, we must consider "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991). From a clear vantage point, Officer Marrero observed Ibrahim driving his bicycle westbound on a road that requires all traffic to proceed in the eastbound

direction. No further investigation was required. The moment that Officer Marrero observed the violation, he had probable cause to stop Ibrahim.

The trial court held that the violation that Officer Marrero observed was *de minimis*, and that further observation was necessary before he could attempt to stop Ibrahim. This simply is not true. The statutory language of the offense does not include a provision setting forth how long a person must travel in the wrong direction before a violation occurs. To the contrary, the offense occurs at the moment the motorist actually travels in the wrong direction. Hence, it is of no moment whether an officer observes a person travelling for one yard, ten yards, or one hundred yards. Upon observing the violation, a police officer has probable cause to stop the offending motorist.

The trial court relies upon **Gleason** for the proposition that an officer must observe a person committing an offense for a sustained period of time before making a vehicle stop. This reliance is entirely misplaced. First, **Gleason** involved a DUI. Our Supreme Court held that a police officer had to observe a motorist for a sustained period of time to determine whether probable cause existed to stop the driver to investigate a DUI. However, as noted above, **Gleason** was superseded by subsection 6308(b). Thus, the probable cause analysis set forth in **Gleason** has no bearing on this case. Second, and more importantly, DUI is one of the crimes that requires reasonable suspicion, not probable cause. In other words, a suspected DUI often necessitates further investigation, whereas driving the wrong way on a

one-way street does not. The two crimes require different levels of suspicion, and nothing about the offense committed by Ibrahim required any additional investigation or any sustained observation by the police officer. *Gleason* simply has no application here, nor is there any justification for granting Ibrahim's motion based upon the trial court's characterization of the violation of the Motor Vehicle Code as *de minimis*.

The trial court also concluded that the traffic stop was pretextual. That is, the trial court believed that Officer Marrero used the alleged *de minimis* traffic stop as an unjustified basis for stopping Ibrahim to investigate some other crime. We observe nothing in the record to support this conclusion. At no point during the suppression hearing did Ibrahim suggest any other crime or set forth any other reason why Officer Marrero wanted to investigate him. To the contrary, the record demonstrates only that Officer Marrero observed Ibrahim clearly violate a provision of the Motor Vehicle Code, and that Officer Marrero attempted to stop Ibrahim based only upon that violation. The record does not support any contention that Officer Marrero stopped Ibrahim for any other reason.

Finally, the trial court held that, because the stop was illegal, Ibrahim's abandonment of the firearm was forced. As a general rule, when a person abandons property, the police may recover that property and use it as evidence against a defendant. However, the abandonment cannot be the result of illegal police conduct. *Commonwealth v. Byrd*, 987 A.2d 786, 791 (Pa. Super. 2009). In other words, if an individual abandons property

- 10 -

during the course of an unconstitutional vehicle stop, we will consider the abandonment to be forced, and the evidence recovered therefrom must be suppressed. In this case, however, Officer Marrero had probable cause to stop Ibrahim. The stop was not unconstitutional. Consequently, Ibrahim was not forced to abandon the gun, and it cannot be suppressed.

Our standard of review require us to review the legal conclusions drawn by the trial court *de novo*. Having done so, it is apparent that the trial court erroneously held that Officer Marrero's actions were unconstitutional. To the contrary, Officer Marrero had probable cause to stop Ibrahim. We vacate the trial court's order, and we remand this case for proceedings consistent with our holding.

Order reversed. Case remanded. Jurisdiction relinquished.[3]

---

[3] The Commonwealth has filed a motion requesting this Court to consider its untimely filed reply brief to be timely. The Commonwealth's reply brief was due on June 11, 2015. The Commonwealth did not file its reply brief and the motion until June 18, 2015. In the motion, the Commonwealth asserts boilerplate averments of essentially being too busy to comply timely with this Court's filing deadlines. The Commonwealth adds no specific information regarding the due dates or names of any of the other cases that have prevented the timely filing of its reply brief. Moreover, the Commonwealth does not explain why it did not file its motion at an earlier date. The Commonwealth having set forth what appear to be merely boilerplate allegations, we deny the motion. We have not considered the Commonwealth's untimely reply brief in any way in deciding this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2015