J-S75025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAMATHA MAE YODER | : | |
| | : | |
| Appellant | : | No. 611 WDA 2017 |

Appeal from the Judgment of Sentence March 24, 2017
In the Court of Common Pleas of Greene County
Criminal Division at No(s):  CP-30-CR-0000206-2016

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                      **FILED APRIL 4, 2018**

Tamatha Mae Yoder appeals from the judgment of sentence imposed March 24, 2017, in the Greene County Court of Common Pleas.  The trial court sentenced Yoder to a term of 36 months' intermediate punishment after a jury convicted her of two counts of driving under the influence of alcohol ("DUI"),[1] and the trial court convicted her of the summary offense of careless driving.[2] On appeal, Yoder argues:  (1) the trial court erred in denying her suppression motion; and (2) the evidence was insufficient to support her conviction of careless driving.  For the reasons below, we affirm.

---

[1] *See* 75 Pa.C.S. §§ 3802(a)(1) and (c).

[2] *See* 75 Pa.C.S. § 3714(a).

The facts, developed from Yoder's suppression hearing and jury trial, are as follows. Cumberland Township Police Officer Zachary Kodric[3] testified that during the early morning hours of April 2, 2016, he was on routine patrol in the Crucible Road area. *See* N.T., 9/19/2016, at 4. At approximately 3:30 a.m., he "got behind" a maroon Jeep as he "headed back to the station." *Id.* As he travelled behind the vehicle for approximately three and one-half to four miles, Officer Kodric observed "the Jeep traversing off the roadway a couple times, [] three to four times at least[, and] fail[ing] to maintain a single lane of travel."[4] *Id.* The officer explained that while there was no fog line, the berm surface, which consisted of "dirt, gravel, grass[,]" was different than the asphalt road surface, and he observed "debris flying off the road" when the Jeep navigated onto the berm. *Id.* at 12-13. At one point, the vehicle nearly missed hitting a guardrail. *See* N.T., 1/13/2017, at 17. Officer Kodric testified he then initiated a traffic stop "[f]or the vehicle traversing off the roadway, failing to maintain a single lane of travel." N.T., 9/19/2016, at 5. When the officer approached the vehicle, he encountered Yoder in the driver's seat and a man, later identified as her husband, in the passenger's seat. The officer

---

[3] We note the officer's last name is incorrectly transcribed in the jury trial transcript as "Codrick." *See* N.T., 1/13/2017, at 15. *See also* N.T., 9/19/2016, at 4 (police officer spells his last name as "Kodric" before his testimony at the suppression hearing).

[4] Officer's Kodric's dashboard video of the incident was played both during the suppression hearing and subsequent jury trial. *See* N.T., 9/19/2016, at 6; N.T., 1/13/2017, at 20-21.

noticed Yoder's speech was slurred, her eyes were glassy, and there was an odor of alcohol "emanating from the driver's side of the vehicle." N.T., 1/13/2017, at 18. He then directed Yoder to complete three field sobriety tests, which she "performed badly." *Id.* at 20. At that point, Officer Kodric arrested Yoder for suspicion of DUI. A breathalyzer test performed at the police station registered Yoder's blood alcohol content at 0.167. *See id.* at 55.

Yoder was subsequently charged with two counts of DUI, and one count each of careless driving and driving on roadways laned for traffic (driving within single lane).[5] Yoder filed a motion to suppress the evidence obtained during the vehicle stop, which the trial court denied by order entered September 27, 2016. The case proceeded to a jury trial. On January 13, 2017, a jury convicted Yoder of two counts of DUI. The court then found Yoder guilty of the summary offense of careless driving, and not guilty of driving on roadways laned for traffic. On March 24, 2017, Yoder was sentenced to a term of 36 months' intermediate punishment and a $1,500.00 fine for one count of DUI, and a $25.00 fine for careless driving.[6] Yoder filed a post-sentence motion on April 3, 2017, asserting she was "entitled to suppression [of the evidence] and a new trial[.]" Motion for Reconsideration,

_____

[5] *See* 75 Pa.C.S. § 3309(1).

[6] The second count of DUI merged for sentencing purposes.

4/3/2017, at ¶ 9. The trial court denied the motion on April 11, 2017, and this timely appeal followed.[7]

In her first issue on appeal, Yoder contends the trial court erred in denying her pretrial suppression motion. Specifically, she argues the Commonwealth failed to establish Officer Kodric had probable cause to initiate the traffic stop. **See** Yoder's Brief at 10.

When considering a trial court's suppression ruling, we must determine "whether the record supports the trial court's findings of fact and whether the trial court erred in its legal conclusions." **Commonwealth v. Enick**, 70 A.3d 843, 845 (Pa. Super. 2013) (citation omitted), *appeal denied*, 85 A.3d 482 (Pa. 2014).

A police officer's statutory authority to stop a motor vehicle is codified in Section 6308 of the Motor Vehicle Code:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers **or has reasonable suspicion that a violation of this title is occurring or has occurred**, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or **to secure such other information as the officer may reasonably believe to be necessary** to enforce the provisions of this title.

75 Pa.C.S. § 6308(b) (emphasis supplied).

_____

[7] On April 18, 2017, the trial court ordered Yoder to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Yoder complied with the court's directive, and filed a concise statement on April 24, 2017.

In interpreting this subsection, the courts of this Commonwealth have concluded that a vehicle stop based solely on reasonable suspicion of a motor vehicle violation "must serve a stated investigatory purpose … [since] … the language of Section 6308(b) … is conceptually equivalent with the underlying purpose of a **Terry** stop." **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 257 (Pa. 2011). However, "[m]ere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation." **Id.** When no further investigation is necessary, an officer must "articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code*.*" **Id.** (emphasis, citation, and footnote omitted).

In the present case, Officer Kodric testified at the suppression hearing that he stopped Yoder's vehicle for "traversing off the roadway, failing to maintain a single lane of travel." N.T., 9/19/2016, at 5. Section 3309 of the Pennsylvania Motor Vehicle Code provides, in pertinent part:

> (1) Driving within single lane.--A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1). In order to initiate a vehicle stop based upon a violation of Section 3309(1), an officer must possess probable cause that the violation

occurred, since no further investigation is necessary. ***See Feczko***, ***supra***, 10 A.3d at 1291. When determining whether probable cause exists,

> we must consider "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime."

***Commonwealth v. Ibrahim***, 127 A.3d 819, 824 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 138 A.3d 3 (Pa. 2016). However, we note "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." ***Commonwealth v. Cook***, 865 A.2d 869, 875 (Pa. Super. 2004) (quotation omitted), *appeal denied*, 880 A.2d 1236 (Pa. 2005).

Here, Yoder argues Officer Kodric did not possess the requisite probable cause to stop her vehicle for a violation of Section 3309(1). ***See*** Yoder's Brief at 10. She emphasizes that because the statute permits a driver to leave her lane of travel if the movement can be made safely, in order for a violation to occur, "a driver must leave [her] lane of travel and there must be something objectively unsafe about it." ***Id.*** Yoder insists that "[t]here was nothing unsafe about [her] … leaving her lane of travel to drive momentarily on the shoulder," and, in fact, the court found her not guilty of violating Section 3309(1). ***Id.*** Relying on ***Commonwealth v. Gleason***, 785 A.2d 983 (Pa. 2001), Yoder contends there was no evidence her driving created a "safety hazard," since there were no other cars on the road, and she "never came close to losing control of the vehicle[.]" Yoder's Brief at 11. Furthermore,

although the court found she drove near a guardrail, she maintains "the guardrail is very, very close to the road in [that] location[,]" and, in any event, she "maintained safety while doing so." *Id.* Accordingly, Yoder argues the trial court erred in denying her suppression motion.

In addition to the testimony of Officer Kodric, the trial court viewed a video of the incident that was recorded from the dashboard of the officer's police car. *See* N.T., 9/19/2016, at 6. After reviewing the evidence, the court made the following factual findings:

> That Patrolman Kodric while on routine patrol in Cumberland Township [] observed a maroon Jeep traveling on Crucible Road. This first observation to be at approximately 3:28 a.m. It should be noted that Crucible Road is an asphalt paved roadway separated by double yellow lines. The Court also now having the benefit of observing a video of the driving conduct of [Yoder], the Court determines as factual that there was no painted fog line to delineate the right side of the road. However, the roadway would be wide enough to continue to travel on the paved section of the highway without need to travel on the berm.
>
> The Court will also determine as factual that there was a distinction between the asphalt and paved roadway and that of the soft berm comprised of gravel and pieces of asphalt and dirt.
>
> The Court believes that the Officer followed [Yoder] from approximately 3:28 a.m. to 3:31 a.m. and that during the initial minutes of the observation the Court believes that the Officer was following at approximately 4 to 5 car lengths. The Court is swayed by the testimony of the Officer and upon viewing the video, that at approximately 3:28 a.m. the maroon Jeep veered off the roadway such that [Yoder] left the paved portion of the highway and entered onto the berm.
>
> The Court will also note that there was no oncoming traffic during the entire period of observation of driving. The Court will also note that at approximately 3:29 a.m. the video depicts and the Officer would have been an eyewitness to [Yoder] again leaving the travel portion of the roadway; that is her vehicle

moved off the asphalt portion and again onto the berm. This driving conduct also occurred at approximately 3:30 a.m.

The Court will note that at approximately 3:31 a.m. [Yoder] traveled very close to a guardrail and needed to make a braking maneuver in order to maintain safety. The Court will acknowledge that, at this point, the Police Officer was following at approximately 2 – 3 car lengths. This being apparent from the video at approximately 3:31 a.m. the vehicle again left the lane of travel, traveling off the paved portion of the roadway.

Trial Court Opinion, 9/27/2016, at unnumbered 2-4. Based on these factual findings, the trial court concluded:

The driving conduct of [Yoder] was more than sufficient to meet the standard of probable cause. The actions of the driver in leaving the travel portion or paved portion of the roadway on at least 3 occasions was more than mere pretext and again gives rise to probable cause such that the traffic stop should be initiated.

*Id.* at unnumbered 4.

Our review of the record, including the dashboard video footage of the incident, reveals ample support for the trial court's factual findings and legal conclusions. Here, the video footage shows Officer Kodric following Yoder's vehicle for four minutes, during which time Yoder traveled on the berm of the road four times, and, at one point, nearly hit a guardrail. Moreover, Officer Kodric testified that there was no adverse weather, or anything "impeding the roadway," which would have necessitated Yoder leaving her lane of travel. N.T., 9/19/2016, at 7. He also explained that although there was no fog line painted on the roadway, the surface of the roadway and berm were different, so that, it was evident when Kodric traveled on the berm because he "observed debris flying off the road." *Id.* at 13.

We find Officer Kodric's testimony, which is supported by the video footage, sufficient to establish probable cause to stop Yoder's vehicle for a violation of Section 3309(1).  Indeed, Yoder's travel on the berm of the road four times in four minutes does not support a claim that she stayed in her lane "as nearly as practicable."  75 Pa.C.S. § 3309(1).  While Yoder emphasizes she is permitted to move outside her lane "in the event it can be done safely[,]"[8] she fails to acknowledge how close she came to hitting a guardrail.  Furthermore, absent any reason to travel on the berm of the road multiple times during the four-minute period, the court was well within its discretion in determining the officer had probable cause to stop Yoder for a violation of Section 3309.[9]

Moreover, we find the facts in **_Gleason_**, **_supra_**, a decision upon which Yoder relies, distinguishable.   In that case, a police officer stopped the defendant's vehicle after he "observed it cross the solid fog line on two or three occasions over a distance of approximately one quarter mile." **_Gleason_**, **_supra_**, 785 A.2d at 985.  The officer noted that during the time he followed the vehicle, "there were no other vehicles on the roadway." **_Id._**  After a subsequent investigation revealed the defendant might be intoxicated, and he refused to submit to blood alcohol testing, the officer arrested defendant for

---

[8] Yoder's Brief at 10.

[9] It is of no moment that the trial court ultimately found Yoder not guilty of a violation of Section 3309(1), as the standard of probable cause is a lesser standard of proof than beyond a reasonable doubt.

DUI and related charges. *See id.* The trial court originally granted the defendant's motion to suppress, concluding the officer "was not justified in stopping [the defendant] simply because he observed [the defendant] swerve onto the berm of the roadway two or three times." *Id.* On appeal, a panel of this Court reversed and found the defendant's "repeated inability to remain on the highway with an intersection approaching reasonably prompted [the officer] to check on the operator for his erratic driving[.]" *Id.* at 986 (internal punctuation and citation omitted).

The Pennsylvania Supreme Court, however, reversed the decision of this Court, opining:

> [W]e conclude that the Superior Court erred in holding that [the officer] was justified in stopping Appellant's vehicle under the facts of this case. As noted previously, the [Superior Court] conceded that "the lack of any evidence at the suppression hearing that Appellant's driving created a **safety hazard** leads us to agree with the trial court that there was insufficient evidence to support a Section 3309(1) violation." Slip op. at 4. In finding the stop of Appellant to be justified nevertheless, the [Superior Court] lowered the standard necessary for a proper vehicle stop as articulated by this Court in [**Commonwealth v.**] **Whitmyer**, 668 A.2d 1113 (Pa. 1995)]:
>
> > If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.
>
> **Whitmyer**, 668 A.2d at 1116, *citing* **Swanger**, 307 A.2d at 879 (emphasis added).

**Gleason**, **supra**, 785 A.2d at 989 (emphasis supplied).

Conversely, in the present case, Yoder's driving on the berm of the roadway "created a safety hazard" when she nearly hit a guardrail. *Id.* The law does not require a near miss with another vehicle or resulting damage to justify a stop for a violation of Section 3309. Under the facts of this case, the trial court properly determined that Yoder's repeated failure to stay on the roadway, culminating with her her close call with a guardrail, was sufficient to "warrant a man of reasonable caution in the belief" that Yoder was violating the Motor Vehicle Code. *Ibrahim*, *supra*, 127 A.3d at 824. Accordingly, Yoder is entitled to no relief.

In her second claim, Yoder contends the evidence was insufficient to sustain her conviction of careless driving.

When considering a challenge to the sufficiency of the evidence,

> [w]e view that evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth. The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." Only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" is a defendant entitled to relief. We do not "re-weigh the evidence and substitute our judgment for that of the fact-finder." As the question of the sufficiency of the evidence is one of law, we consider the evidence *de novo.*

*Commonwealth v. Ford*, 141 A.3d 547, 552–553 (Pa. Super. 2016) (internal citations omitted), *appeal denied*, 164 A.3d 483 (Pa. 2016).

Pursuant to Section 3714 of the Motor Vehicle Code, a person may be convicted of careless driving if she "drives a vehicle in careless disregard for

the safety of persons or property[.]" 75 Pa.C.S. § 3714(a). "The *mens rea* requirement applicable to [Section] 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." ***Commonwealth v. Gezovich***, 7 A.3d 300, 301 (Pa. Super. 2010) (internal punctuation and citation omitted).

Yoder contends the evidence, which consisted of her car "drifting four times out of its lane over the course of four miles under good weather conditions with no other traffic present[,]" was insufficient to "warrant a finding that [she] operated her vehicle with careless disregard for the safety or property of others." Yoder's Brief at 13. Moreover, she emphasizes her actions did not "create any significant risk of harm or injury to anyone else" and her driving under the influence, alone, does not support a conviction of careless driving. ***Id.*** at 14. Accordingly, she argues "[w]ithout a showing of some careless disregard and actual safety hazard observed in her driving, the record cannot support a conviction for Careless Driving." ***Id.***

Although the trial court did not specifically address this claim in its Pa.R.A.P. 1925(a) opinion, our review of the record reveals sufficient evidence to support Yoder's careless driving conviction. Although Yoder focuses on the fact that, because there were no other cars or pedestrians on the roadway, her driving did not create a risk of injury to any person, she fails to acknowledge she may be convicted of careless driving if she "drives a vehicle in careless disregard for the safety of persons **or property**[.]" 75 Pa.C.S. § 3714(a). There is no requirement that an injury or property damage actually

occur. Here, Yoder's near miss of the guardrail, after traveling on the berm repeatedly over the course of several miles, was sufficient to support her conviction of careless driving. Accordingly, no relief is warranted on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2018