J. S29043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
TAUHEED A. DYCHES, : No. 2256 EDA 2018
:
Appellant :

Appeal from the Judgment of Sentence Entered August 25, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0011443-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED JULY 24, 2019**

Tauheed A. Dyches appeals from the August 25, 2016 judgment of

sentence entered by the Court of Common Pleas of Philadelphia County

following his conviction of possession of a firearm by a prohibited person,

carrying a firearm without a license, and carrying a firearm in public in

Philadelphia.[1]  After careful review, we affirm.

The trial court provided the following factual history:

> [Appellant] filed a motion to suppress all physical
> evidence that he discarded, asserting a violation of his
> constitutional rights and forced abandonment.
> Pursuant to which, the Commonwealth presented the
> testimony of Officer Thomas Bellon, who testified that
> he was a police office[r] for approximately
> fourteen years and spent his fourteen years serving in
> the 25th District.  He testified that he has conducted
> over 100 firearm arrests.

---

[1] 18 Pa.C.S.A. §§ 6105(a), 6106(a), and 6108(a), respectively.

> He indicated that on the evening of October 27, 2015, shortly before 11:00 p.m., he was with his partner, Officer Huff, in a marked patrol vehicle serving as part of a tactical unit. He indicated that he and his partner received reports from other officers and other persons of gunshots fired in the area of Broad and Clearfield.
>
> Very shortly thereafter, as they went to that area, around 16th and Allegheny, they spotted [appellant] approaching Allegheny at a fast pace. The officer described this area as a residential area and he is familiar with it and it is known to him for firearms and drugs [sic] sales.
>
> As he approached [appellant] to ask him if he knew anything about the gunshots, [appellant] took flight. The officers followed in the vehicle. Very shortly thereafter, [appellant] tossed the firearm, that was later recovered, as he ran for about another twenty-five feet before he was cut off by the vehicle and apprehended.
>
> The gun that was recovered was still warm to the touch and was recovered just seconds after [appellant] fled.

Trial court opinion, 12/18/17 at 2-3, quoting notes of testimony, 4/28/16 at 31-33 (extraneous capitalization omitted).

The trial court denied appellant's motion to suppress on April 28, 2016. Immediately thereafter, the trial court held a non-jury trial in which it convicted appellant of possession of a firearm by a prohibited person, carrying a firearm without a license, and carrying a firearm in public in Philadelphia. On August 25, 2016, the trial court imposed an aggregate sentence of four to ten years' imprisonment. Appellant filed a post-sentence motion, which the trial court denied. Appellant did not file a notice of appeal to this court.

On March 1, 2017, appellant filed a timely **pro se** petition pursuant to the Post Conviction Relief Act[2] seeking reinstatement of his rights to a direct appeal, **nunc pro tunc**.  The PCRA court granted appellant's petition and reinstated his direct appeal rights **nunc pro tunc** on July 17, 2017.  Appellant filed a timely notice of appeal to this court on July 27, 2017.

The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant complied.  The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

> Did the trial court commit an error of law when it failed to grant [appellant's] motion to suppress, where the officers lacked reasonable suspicion to detain and thus the officer's [sic] forced him to abandon the firearm?

Appellant's brief at 4 (extraneous capitalization omitted).

When reviewing a denial of a motion to suppress evidence, we are governed by the following standard:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the

---

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

> evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

> *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) (citation omitted).

> Additionally, the Pennsylvania Supreme Court has ruled that when reviewing a motion to suppress evidence, we may not look beyond the suppression record. *See In re L.J.*, [] 79 A.3d 1073 ([Pa.] 2013).

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. 2017).

"The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." *Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa.Super. 2005) (citation omitted). "Reasonable suspicion is a less demanding standard than probable cause because it can be established by information that is different in quantity and quality than that required for probable cause; it can arise from information that is less reliable than that required to show probable cause."

*Commonwealth v. Emeigh*, 905 A.2d 995, 998 (Pa.Super. 2006) (citation omitted).

> To meet the standard of reasonable suspicion, "the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." *Barber*, *supra* at 593 (citations and quotations omitted). Further, "police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Id.*

*Commonwealth v. Smith*, 904 A.2d 30, 35-36 (Pa.Super. 2006). Our supreme court has determined that "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion" that would justify initiating an investigative detention." *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001), citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Here, the trial court concluded that "[t]he police observed conduct which, based on their training and experience, the time of day, at a location known for criminal activity, reports of gunshots and [a]ppellant's unprovoked flight, gave them a reasonable belief that there was criminal activity afoot." (Trial court opinion, 12/18/17 at 4.) Based on our review of the record, we find that the record supports the trial court's factual findings and that the trial court's legal conclusions drawn from those facts are sound. We, therefore, find that the trial court did not err when it determined that the police

possessed the requisite reasonable suspicion to initiate an investigative detention.

Appellant further argues that the police forced appellant to abandon the gun at issue. (Appellant's brief at 13.) Specifically, appellant contends that because appellant discarded the gun while "he was in flight from an illegal seizure," the evidence should be suppressed. (*Id.* at 14.) The trial court held that appellant's "decision to discard the gun was not unlawfully coerced and [appellant's] motion to suppress was properly denied." (Trial court opinion, 12/18/17 at 5.)

In order for a defendant to claim forced abandonment of contraband, he or she must first establish that "the abandonment of contraband or evidence be precipitated by illegal police conduct." ***Commonwealth v. Byrd***, 987 A.2d 786, 791 n.4 (Pa.Super. 2009), citing ***Commonwealth v. Jones***, 978 A.2d 1000, 1005 n.6 (Pa.Super. 2009); ***see also Commonwealth v. Ibrahim***, 127 A.3d 819, 825 (Pa.Super. 2015), ***appeal denied***, 138 A.3d 3 (Pa. 2016).

Here, the abandonment of the gun was not precipitated by illegal police conduct, as the police possessed the requisite reasonable suspicion to initiate an investigatory detention. Accordingly, appellant's forced abandonment fails.

Judgment of sentence affirmed.

J. S29043/19

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/19