J-A05030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASMINE KNIGHT | : | |
| | : | |
| Appellant | : | No. 1388 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 24, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-SA-0000100-2020

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                 **FILED:  APRIL 26, 2021**

Appellant Jasmine Knight appeals from the judgment of sentence imposed following her conviction for driving with a suspended operating privileges.[1]  Appellant argues that the trial court erred by denying her suppression motion after police initiated a traffic stop and obtained her driving record without probable cause or reasonable suspicion.  We affirm.

The trial court set forth the relevant factual and procedural history.  On October 15, 2019, Officer Adam Sibley conducted a traffic stop of Appellant's vehicle and charged her with driving under suspension—DUI related. Appellant moved to suppress the evidence flowing from the stop, claiming that it was an unconstitutional stop.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 1543(b)(1)(i).

On June 24, 2020, the trial court conducted a hearing on Appellant's motion to suppress. At the hearing, Officer Sibley testified that just prior to midnight on October 5, 2019, he was patrolling in his vehicle and "observed a vehicle that was facing the wrong direction on a one-way roadway[, which] roadway is the borough parking lot." N.T. Suppression Hr'g, 6/24/20, at 4. He explained that the traffic lane was an entrance only and the vehicle was facing out toward the exit. Initially, the vehicle was stationary; however, when he approached, it reversed back into the lot. Officer Sibley described the lot as "basically a U shape" with a one-way entrance and a one-way exit, such that when Appellant "reversed back into the lot[, she was] still facing the wrong direction in that lot." *Id.* at 10. The direction of traffic flow was marked by official signage. *See id.* at 10-11.

Officer Sibley then conducted a traffic stop of the vehicle. *See id.* at 5. He approached Appellant, who was the driver of the vehicle, and got her name, date of birth, and address. Appellant initially told Officer Sibley that her first name was Rita, rather than Jasmine. *See id.* at 6. Officer Sibley then conducted a motor vehicle records check of the registration and driver's license and found that the registration of the vehicle was suspended, and that Appellant had not provided the correct name. *See id.* at 7, 12.

At the conclusion of the hearing, the trial court denied Appellant's motion to suppress. Following a bench trial that same day, the trial court convicted Appellant of driving under suspension—DUI related and sentenced her to sixty days' imprisonment.

Appellant timely appealed and timely complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant raises one question on appeal: "Did the trial court err in denying Appellant's motion for suppression of her driver record obtained pursuant to a traffic stop?" Appellant's Brief at 2.

Appellant argues that the trial court erred when it denied her motion to suppress the evidence stemming from the traffic stop. She claims that the court should have concluded that the vehicle stop required probable cause. *See id.* at 7 (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*)). Appellant alleges that "[a]n officer cannot lawfully stop a vehicle based on a reasonable suspicion that the vehicle violated the traffic code prohibiting driving the wrong way on a one way because a stop of this vehicle would do nothing to serve an investigatory purpose." *Id.* at 8.

Further, Appellant argues that the stop was illegal because the officer lacked probable cause. She claims that the officer did not see the vehicle moving the wrong way against the flow of traffic before the stop and merely saw a stopped vehicle facing the wrong way. *See id.* Relying on this Court's decision in *Commonwealth v. Ibrahim*, 127 A.3d 819 (Pa. Super. 2015), she argues that to initiate a traffic stop for traveling in the wrong direction in violation of 75 Pa.C.S. § 3308, an officer must actually observe the vehicle moving in the wrong direction. *See id.* at 9-10 (citing *Ibrahim*, 127 A.3d at 824). Because the officer only saw her reverse—with the proper flow of

traffic—Appellant concludes that the officer did not have probable cause to initiate the stop. *See id.* at 10.

In response, the Commonwealth argues that the traffic stop only required reasonable suspicion. *See* Commonwealth's Brief at 10. Specifically, it claims that Officer Sibley observed, late at night, a vehicle positioned the wrong way on a one-way roadway located near a bar. The Commonwealth relies on the officer's experience that motorists found driving the wrong way on this roadway are either lost or intoxicated, and therefore, "the stop of [Appellant's] vehicle was based on the reasonable suspicion that [she] had violated the DUI laws . . . and further investigation was necessary." *Id.*

Alternatively, the Commonwealth claims that Officer Sibley had probable cause to believe that Appellant had violated Section 3308. Conceding that the officer did not see Appellant drive against the flow of traffic, the Commonwealth suggests that facing the wrong direction as the vehicle traveled in reverse on the roadway was sufficient probable cause. *See id.* at 10-11.

In reviewing a challenge to a trial court's suppression ruling, our standard of review is limited to determining

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where

. . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Green***, 168 A.3d 180, 183 (Pa. Super. 2017) (citation omitted). Further, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." ***Commonwealth v. Rapak***, 138 A.3d 666, 670 (Pa. Super. 2016) (citation omitted).

Initially, we must discern whether reasonable suspicion or probable cause was required for Officer Sibley to make a stop of Appellant's vehicle.

[W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion for the stop.

Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015) (formatting altered and citations omitted). Under either standard, "the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Id.* at 996 (citation and quotation marks omitted).

Where a traffic stop is "based on the observed violation of the Vehicle Code or [an] otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) (citation omitted). This Court has held that an officer must have probable cause to stop an individual when the officer's stop is based on a violation of Section 3308, which states that "[u]pon a roadway designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic-control devices." 75 Pa.C.S. § 3308(b). *See Ibrahim*, 127 A.3d at 824 (holding that "section 3308, like speeding, is an offense that requires probable cause, not reasonable suspicion, before an officer may stop the vehicle."); *see also Commonwealth v. Haines*, 166 A.3d 449, 455 (Pa. Super. 2017) (reasoning that where the offense is driving the wrong way on a one-way street, "no evidence relevant to the offense is likely to be found in the offending vehicle," therefore "permitting further investigation based on reasonable suspicion[ ]cannot be used to justify the stop."). Therefore, in keeping with this Court's precedent, we apply a probable cause standard in determining whether the Commonwealth established a Section 3308 violation.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the stop, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a **probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation omitted; emphasis in original).

> [P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference—not necessarily even the most likely inference. . . . [W]hile an actual violation of the [Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Vehicle Code] in order to lawfully stop the vehicle.

***Commonwealth v. Spieler***, 887 A.2d 1271, 1275 (Pa. Super. 2005) (citations omitted and formatting altered); ***see id.*** at 1276 (finding that a reasonable inference from the defendant's car being stopped in the flow of traffic is that the defendant had stopped the car in the roadway). "[W]e must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act." ***Commonwealth v. Dennis***, 612 A.2d 1014, 1016 (Pa. Super. 1992) (citation omitted). A police officer "has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." ***Harris***, 176 A.3d at 1019 (citation omitted).

In the instant case, Officer Sibley testified that when he first saw Appellant's vehicle, it was in the entrance roadway to the borough parking lot, facing against the flow of traffic. **See** N.T. Suppression Hr'g at 4. He concluded that based on the position and location of her vehicle, Appellant had traveled the wrong way on this one-way roadway in violation of Section 3308(b).[2] Therefore, our record reveals that Officer Sibley articulated specific facts, which considering the totality of the circumstances, provided probable cause to believe that Appellant had committed a violation of Section 3308 of the Motor Vehicle Code and which justified the traffic stop. **See Martin**, 101 A.3d at 721; **Spieler**, 887 A.2d at 1275. We recognize that Officer Sibley did not observe Appellant as she initially drove the wrong way down the roadway, but recognize that his observation of her vehicle in the roadway facing the wrong way was sufficient for him to reasonably infer that she had driven the wrong way in order to get her vehicle into that position in violation of Section 3308. **See Spieler**, 887 A.2d at 1275.

Accordingly, we affirm the trial court's denial of Appellant's motion to suppress the evidence obtained from the search of her driving record after her

_____

[2] Contrary to the Commonwealth's assertion, Officer Sibley never testified that he stopped Appellant's vehicle based on a reasonable suspicion that Appellant had violated the DUI laws of the Motor Vehicle Code. **See** Commonwealth's Brief at 10. Moreover, we note that during the suppression hearing, the Commonwealth conceded that the officer would have needed probable cause in order to conduct a traffic stop of Appellant's vehicle for a violation of driving the wrong way on a one-way street. **See** N.T. Suppression Hr'g at 23.

traffic stop, but do so on different grounds than those relied upon by the trial court.[3]

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/21

---

[3] We acknowledge that in its Rule 1925(a) opinion, the trial court explained that it had concluded that only reasonable suspicion was required for Officer Sibley to make the stop of the vehicle, but that under either standard, the stop was justified. **See** Trial Ct. Op., 9/24/20, at 4-5. "We may affirm the trial court's determination on any grounds, even where those grounds were not suggested to or known by the trial court." **Commonwealth v. Gatlos**, 76 A.3d 44, 62 n.14 (Pa. Super. 2013) (citation omitted).