J-A27021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARIA ELIZABETH KELLY | : | |
| | : | |
| Appellant | : | No. 395 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 27, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001782-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: FEBRUARY 12, 2025**

Maria Kelly appeals from the judgment of sentence entered after she was convicted of two counts of driving under the influence of alcohol (DUI).[1] She challenges the denial of her motion to suppress evidence. Police saw Kelly make a right turn into a center turning lane, drive for a distance, then move over and drive straight in the right lane, not having turned left from the center turning lane. This provided probable cause to believe that Kelly violated the Vehicle Code. We therefore affirm.

On March 7, 2022, police charged Kelly with DUI and failing to drive within a single lane. She moved to suppress evidence, which the trial court heard on April 3, 2023. The court made the following findings of fact:

1. On October 28, 2021, [O]fficer Jonathan Martinez of the Dallas Township Police Department was in uniform and operating a

_____

[1] 75 Pa.C.S. § 3802(c) and (a)(1).

marked patrol vehicle on the Dallas Memorial Highway in Luzerne County.

2. The Memorial Highway is three lanes; a northbound lane, a southbound lane and a center lane which is marked a turning lane which terminates at a highway divider which then separates the north and southbound lanes.[2]

3. Officer Martinez observed a vehicle exit a parking lot and cross the travel lane[s] to enter the center lane of the highway which is reserved and marked to be used for turns only.

4. The vehicle proceeded to travel in the turning lane at a high rate of speed which the officer characterized as unsafe.

5. The vehicle operator did not signal a turn upon entering the center turning lane.

6. The vehicle operator did not signal a turn from the center lane indicating that she intended to use the lane for its designated purpose.

7. The vehicle operator exited the center lane at its terminus and entered the lane marked for travel.

8. The vehicle operator had opportunities to use the center lane for its designed purpose to turn from that lane but she did not do so.

9. Having observed the operator drive the vehicle in the center turning lane until the lane terminated without having ever turn[ed] the vehicle out of that lane or signaling an intention to turn, Officer Martinez initiated a traffic stop of the vehicle.

10. During [Officer Martinez's] pursuit of that vehicle, the operator failed to signal a lane change.

11. Ultimately, the driver of the vehicle pulled over and Officer Martinez approached her car.

_____

[2] From the police dashboard video of the incident and defense exhibits, it appears that the highway has five lanes: two northbound, two southbound, and one in the center.  Both edges of the center lane are solid yellow lines with broken yellow lines inside.  To the south, the center lane is marked with double solid yellow lines on both sides and is unavailable for driving.

12. The operator of the vehicle was identified as Maria Kelly.

13. Officer Martinez observed on her person the odor of alcohol and other [indicia] of impairment.

14. Officer Martinez arrested Maria Kelly . . . for suspicion of driving under the influence of alcohol.

15. Officer Martinez also cited [Kelly] for violating 75 Pa.C.S.A. § 3309, Driving on roadways laned for traffic.

Findings of Fact and Conclusions of Law, 10/13/23, at 1–3.

The court concluded that Officer Martinez had both probable cause and reasonable suspicion that Kelly was unlawfully traveling in the center lane. *Id.* at 3 (citing 75 Pa.C.S.A. § 3331(d)(2)). The court denied suppression.

On February 27, 2024, the case proceeded to a stipulated non-jury trial. The trial court found Kelly guilty of two counts of DUI. The court sentenced Kelly in the same proceeding to 72 hours to 6 months of confinement. Kelly timely appealed. Kelly and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Kelly presents two related issues for review:

1. Did the trial court err in finding that the traffic stop was valid based on "probable cause" that [Kelly] had allegedly committed motor vehicle offenses and, then, refusing to suppress all evidence seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?

A. Did the trial court err in finding that the traffic stop was valid based on "reasonable suspicion" where [Kelly] had committed a non-investigatable offense and, then, refusing to suppress all evidence seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?

Kelly's Brief at 3.

Appellate review of the denial of a motion to suppress evidence adheres to the following principles:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (quoting *Commonwealth v. Freeman*, 150 A.3d 32, 34–35 (Pa. Super. 2016)).

The quantum of cause needed to support a traffic stop depends on the nature of the violation observed or suspected. *Commonwealth v. Salter*, 121 A.3d 987, 992–93 (Pa. Super. 2015) (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1290–91 (Pa. Super. 2010) (*en banc*)). A police officer has authority under the Vehicle Code to stop a vehicle based on a reasonable suspicion. *Id.* at 992 (citing 75 Pa.C.S. § 6308(b)). We have clarified that the reasonable suspicion standard applies where an officer suspects a violation but must investigate further to determine whether that violation occurred. *Id.*

at 993. Probable cause, a more stringent standard, is required where no further investigation is needed to establish a Vehicle Code violation. *Id.*

Probable cause requires an officer "to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the" Vehicle Code. *Commonwealth v. Shaw*, 246 A.3d 879, 884 (Pa. Super. 2021) (quoting *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004)). Notably, this standard "does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Salter*, 121 A.3d at 994 (quoting *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005)). "[A] police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Gurung*, 239 A.3d 187, 191 (Pa. Super. 2020) (quoting *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017)).

Subsection 3331(d) of the Vehicle Code provides for driving in "two-way left turn lanes." The statute allows the use of a center left-turn lane only in certain circumstances:

> Where a special lane for making left turns by drivers proceeding in opposite directions has been indicated by official traffic-control devices:
>
> \* \* \*
>
> (2) A vehicle shall not be driven in the lane except when preparing for or making a left turn from or into the roadway

> or when preparing for or making a U-turn when otherwise permitted by law.

75 Pa.C.S. § 3331(d)(2).

In most cases, a police officer who suspects a violation of subsection 3331(d)(2) will not need to investigate further. Therefore, a typical stop based on this statute must be supported by probable cause. *Salter*, 121 A.3d at 992–93.

Here, Officer Martinez had probable cause to believe that Kelly violated subsection 3331(d)(2). While he was driving north, he saw her make a right turn southbound into the center lane. Once Officer Martinez turned around, he saw that Kelly was still driving south, now in one of the travel lanes. Because Officer Martinez saw Kelly drive in the center left-turn lane without having turned left or making a U-turn, he had probable cause to stop her.

Kelly's arguments to the contrary are unavailing. She argues that the statute permits a driver in the center lane to change her mind and move to the right travel lane. However, Officer Martinez could infer that Kelly intended to drive the direction she did without "preparing for" a left turn as permitted by subsection 3331(d)(2). Even if Officer Martinez lacked certainty, a violation of the Vehicle Code "is one reasonable inference" of his observations. *Salter*, 121 A.3d at 994. This is enough to establish probable cause. *Id.*

Kelly also characterizes her use of the center lane as a *de minimis* infraction. Kelly likens her case to *Commonwealth v. Slattery*, 139 A.3d 221 (Pa. Super. 2016), in which a driver signaled a lane change within fewer than 100 feet. After holding that the driver did not violate the applicable

- 6 -

statute, we noted that the infraction was *de minimis* at most and reasonable for safety based on the presence of businesses. ***Id.*** at 225 n.8. Kelly also compares cases holding that brief instances of crossing road lines did not provide probable cause. ***E.g.***, ***Commonwealth v. Gleason***, 785 A.2d 983 (Pa. 2001) (holding that momentary crossings of the berm line did not violate the Vehicle Code or provide probable cause); ***Commonwealth v. Garcia***, 859 A.2d 820 (Pa. Super. 2004) (same).

We reject Kelly's *de minimis* argument. Kelly drove in the center lane for more time than the brief line crossings in ***Gleason*** and ***Garcia***. Subsection 3331(d)(2) "does not include a provision setting forth how long a person must travel in the [center lane] before a violation occurs," to account for a *de minimis* violation. ***Cf. Commonwealth v. Ibrahim***, 127 A.3d 819, 824–25 (Pa. Super. 2015). Officer Martinez possessed probable cause as soon as he saw that Kelly had been in the center lane without turning left or making a legal U-turn. ***Gurung***, 239 A.3d at 191. Further, unlike the driver's actions in ***Slattery***, there is no reason why Kelly's use of the center lane was reasonable in the interest of safety. The trial court did not err in denying suppression based on probable cause.

Because Officer Martinez had probable cause to stop Kelly for violating subsection 3331(d)(2), we do not reach Kelly's secondary issue about reasonable suspicion.

Affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>02/12/2025</u>